THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* JOHN CARPENTER, APPELLANT.

*Challenge to a juror for bias — to what subject the bias must relate—Code of Criminal Procedure, sec. 376 — peremptory challenge — right of comment by the court.*

Upon the impanneling of a jury to try the defendant for the crime of murder in the first degree, two of the jurors were interrogated as to the defense of insanity, and asked whether if that defense were interposed on behalf of the

appellant on the trial they would have any prejudice against it. The result of the examination established that they had a prejudice against that defense which would remain with them, but that they felt that they would be guided and controlled by the evidence, notwithstanding this impression.

*Held*, that the court did not err in overruling challenges made to the jurors by the defendant's counsel, because (1) the testimony did not show any existing bias sufficient to disqualify the juror from sitting ; (2) that even if the existence of a prejudice or bias against the defense of insanity were established, it would not disqualify the juror, as such a bias or prejudice was not a proper legal basis of a challenge.

The bias or prejudice which disqualifies a juror must relate to some existing fact, and not to a mere hypothesis ; it must relate to the offense of which the party stands charged, and not to any of the various defenses or collateral issues which may be interposed and created and by which the accused may be relieved from responsibility.

A juror cannot be inquired of in respect to his prejudice against any particular defense, whether that defense is of a character that can be summarized in one word or phrase, such as "insanity," "*alibi*," or "mistaken identity," for example, or is of a more complex character, so that it can only be explained by a statement of the very facts and circumstances that are to be offered in evidence. The bias or prejudice must be one actually existing for or against the prisoner, and be either personal in its character or springing from convictions or opinions as to the charge made against the prisoner ; so controlling in its influence as to destroy a belief that in the consideration of the case impartial justice can be done by the juror.

A peremptory challenge cannot be made after the jury has been sworn. Subsequently swearing the jury as a body does not restore that right.

Right of the judge to comment upon the testimony, considered.

APPEAL from a judgment of the Court of Oyer and Terminer in the county of New York, upon a conviction of murder in the first degree.

*Adolphus D. Pope*, for the appellant.

*De Lancey Nicoll*, assistant district-attorney, for the respondent.

BRADY, J. :

The defendant was charged with the murder of his wife and was found by the jury to have killed her under circumstances warranting a conviction of murder in the first degree. It appeared on the trial that some years before the killing he had intended or attempted a similar act, and struck down a woman in a church in this city whom he believed to be his wife, for which offense he was sent to the State prison ; and further, that while in the prison he had

expressed his determination, upon his liberation, to kill his wife, which he did soon after his discharge. The facts and circumstances establish beyond all peradventure, therefore, deliberation, premeditation and a brutal murder.

The appellant complains of errors committed during the impanneling of the jury, which originated, as is claimed, in this way : Two jurors were interrogated as to the defense of insanity, namely, Francis A. White and James M. Lehmaier, and asked if that defense were interposed on behalf of the appellant on the trial whether they would have any prejudice against it, and the result of the examination of each on that subject was substantially that they had a prejudice against that defense which would remain with them, but it may be said that notwithstanding this supposed bias, it is patent upon the whole examination that they felt that they would be guided and controlled by the evidence, notwithstanding the impression mentioned. Assuming, however, that this was doubtful, the complaint made cannot avail the accused as we shall see. The Code of Criminal Proceedure provided, by section 376, for particular causes of challenge, which are of two kinds :

*First.* For a bias which when its existence is ascertained, in judgment of law, disqualifies the juror, and which is known in the Code as " implied bias."

*Secondly.* For the existence of a state of mind on the part of the juror with reference to the case, or to either party, which satisfies the court, in the exercise of a sound discretion, that he cannot try it impartially and without prejudice to the substantial rights of the party challenging, and which is known as " actual bias." But it is declared that the previous expression or formation of an opinion as to the guilt or innocence of the defendant, or a present opinion or impression in reference to it, is not a sufficient ground of challenge for " actual bias " to any person otherwise legally qualified, if he declare on oath his belief that such opinion or impression will not influence his verdict, and that he can render an impartial one according to the evidence, and the court is satisfied that he does not entertain such a present opinion or impression as would influence his verdict. By section 377 the grounds of challenge for implied bias are stated in eight subdivisions, which it is declared may be taken and for no other. It is not necessary to state the

grounds contained in these several subdivisions of the section mentioned. It is sufficient to say that they do not include any bias against any defense that might be interposed in answer to the crime charged. There is nothing in the provisions of section 376 which includes such a bias. They relate to an existing state of facts and not to an hypothesis, namely, the defense of insanity, if interposed. The bias or prejudice which disqualifies the juror must, as already intimated, be of some existing fact. His qualifications relate to the condition of his mind at the time of his selection, and not to a condition of mind which may be produced by subsequent events. If his bias or prejudice against the defense of insanity is a good reason why he should be excused, then his bias or prejudice against the defense of *alibi* is an equally good reason. The doctrine seems to be this, therefore, that the bias or prejudice relates to the offense of which the party stands charged, and not to any of the various defenses or collateral issues which may be interposed and created and by which the accused may be relieved from responsibility. If the juror stands indifferent between the people and the accused in reference to the crime charged, that is sufficient, particularly as we have seen by the provisions of the Code, that even if he have an opinion as to the guilt or innocence of the accused, he is qualified under the statute if he can say under oath that he believes he could render an impartial verdict. (*People* v. *Casey,* 96 N. Y., 115.)

The learned counsel for the appellant, who has displayed great zeal in behalf of his client, has cited no case furnishing a precedent for this line of examination, and it is supposed none can be found. In the case of the *Commonwealth* v. *Porter* (4 Gray, 423), it was decided that the accused was not entitled to ask a juror whether he had formed or expressed an opinion as to the credibility of a witness upon whose testimony it was expected the prosecution might rely to support the indictment. In the case of the *Commonwealth* v. *Buzzell* (16 Pick, 153), which was an indictment charging the accused with burning the Ursuline Convent, in Charlestown, the attorney general — as the prosecution was to be supported in part by the testimony of Roman Catholics, and, as he apprehended that in consequence of there being much excitement in the public mind on the subject of the trial, the persons returned as jurors might not be impartial — suggested that, as the jurors were sworn, they be

asked whether they entertained the opinion that a Roman Catholic was not to be believed on his oath. The court ruled that the question should not be put.

This subject was ably discussed by the present surrogate of this county, then acting as the district attorney in the case of *Templeton* v. *The People*, and his brief is to be found in the cases of the General Term, 1875, volume 2, in the library of the Association of the Bar. He contended that the practical effect of recognizing the claim to examination as to the defense of insanity would be an indefinite increase of the number of peremptory challenges permitted by law, and said, amongst other things, that there was manifestly no power in a court to prevent counsel, who had caused jurors to be discarded on account of their bias or prejudice against particular defenses, from abandoning those defenses as soon as he had secured twelve men to his liking. And he suggested that the inquiry in reference to the qualifications of a juror must be : *Does* the juror now stand indifferent as he stands unsworn ? Not, will he stand indifferent in the event of a contingency which may never occur ?

It is intended, therefore, to state, as a proposition of law applicable to this and kindred cases, that a juror cannot be inquired of in respect to his prejudice against any particular defense, whether that defense is of a character that can be summarized in one word or phrase, such as " insanity," " *alibi*," or " mistaken identity," for example, or is of a more complex character, so that it can only be explained by a statement of the very facts and circumstances that are to be offered in evidence. The bias or prejudice must be one actually existing for or against the prisoner, and either personal in its character or springing from convictions or opinions as to the charge made against the prisoner, so controlling in its influence as to destroy a belief that, in the consideration of the case, impartial justice can be done by the juror. This seems to be doctrine which appeals at once to all the proprieties in the administration of criminal justice.

It must be farther observed that no juror has any right, and should not be regarded as having any right, to entertain any prejudice against any defense, whether of insanity or otherwise. It is his duty to consider, and impartially, all the evidence submitted to

the court of which he forms a constituent part, and if, in the discharge of his duty as a juror, he permitted a bias or prejudice against a particular defense to control him, he violates his oath, disobeying the law of the land, and perpetrating an outrage in the administration of justice. He would subject himself by such a course to indictment and to punishment, which he would richly deserve. Indeed, it may be with propriety said that no juror should be excused, if the statute did not exist authorizing it, from serving in a case involving capital punishment, simply because he had a prejudice against that penalty. He has nothing to do with the punishment. His province is to say whether the accused is guilty of the crime charged as a matter of fact upon the evidence. The punishment is declared by the legislature and pronounced by the court. He shall not be permitted to entertain any prejudice as a citizen of the State in which he is called upon to serve as a juror; he is bound by the laws which there prevail, and when he takes his seat in the jury box he has no right whatever to interpose his private views against the law which he is bound to observe by every obligation which can bind men together.

The laws are not to succumb to the prejudice of men. They are required to acquiesce in and to be governed by them. There is no doubt that they must be, for a violation of them is punishable sometimes lightly, sometimes with severity, and perhaps in the gradation of punishment frequently too lightly. If a man becomes a citizen of the State, it devolves upon him at once to yield his private conclusions about its laws whenever placed in a position where he is called upon to perform a public duty; and if he does not, he assumes at once the attribute of an outlaw who stands arrayed against the rules prescribed by due authority for his government and control. It is unnecessary, however, to pursue this subject further. The conclusion arrived at is that whether there was or was not a bias against the defense of insanity was wholly immaterial.

The appellant also complains that he was not permitted to exercise the right of peremptory challenge after the jury were sworn. In regard to this, however, it appears that each juror, after his examination and the failure of the accused to challenge peremptorily, was sworn to try the issue between him and the people. On that

subject, section 371 of the Criminal Code provides that the court may, in its discretion for good cause, set aside a juror at any time before evidence is given in the action. The right of peremptory challenge continues, it is true, until the juror has actually been sworn. We so decided in this case when it was before us on a former appeal, and there seems to be no doubt that the rule declared by the section just referred to prevailed before its passage. (*People* v. *Damon*, 13 Wend., 351.)

There is nothing in this case to show that, in refusing to permit a peremptory challenge to be taken after the juror was sworn, the discretion with which the court was invested was in any way abused, and the accused can take nothing by the objection stated.

Before the oath was administered to the last juror, the counsel for the accused asked that the jury be sworn as a body to try the accused, to which the court responded : " The clerk will swear the jury." The defendant's counsel then said : " We desire to challenge peremptorily Mr. William O. Barclay, the first juror, before the jury is sworn." The court said : " That is overruled," and the defendant's counsel excepted, whereupon the last juror was sworn. The defendant's counsel then asked that the jurors be sworn as a body, to which the learned judge responded that the jury was already sworn according to law, but if the prisoner desired the body to be sworn collectively he saw no objection to it, although it was in his judgment a work of supererogation. The clerk thereupon swore the twelve persons sitting in the jury box according to the request of the counsel for the accused.

Upon these incidents the counsel for the accused insists that by ordering the jury to be sworn collectively as a body at one and the same time, the oath administered or taken by each of the jury, individually, was vacated, and the right of peremptory challenge attached as if none of the jurors had been sworn. This is very ingenious but extremely metaphysical.

It seems to be destitute of merit, however, and particularly when the act of which the accused seeks to avail himself was one performed by his particular request through his counsel. If the swearing of the jury, however, created such an extraordinary result as that claimed by the counsel for the accused, and he should be permitted thus to take advantage of his own wrong, nevertheless

it would not avail him, for the reason that after the jury were sworn he neither interposed a peremptory challenge nor claimed to exercise any right to do so. It is also contended, on behalf of the accused, that the verdict is against the weight of evidence. The defense was insanity. There was no pretense of any other, and the case presented facts and circumstances which left no other conclusion to be drawn than that a deliberate and brutal murder had been committed.

Some facts and circumstances were arrayed on behalf of the accused, which it was supposed furnished evidence of a diseased mind, and several medical gentlemen were examined on his behalf, whose testimony tended to establish the existence of insanity at the time of the commission of the offense of which he stood charged. But these facts and circumstances were responded to by the evidence of witnesses who had known him; who had seen him in and out of prison; by proof of his demeanor, whilst confined in the State prison, extending over several years, and also by the testimony of medical gentlemen who had seen and watched him, and thus an issue was fairly and fully presented upon the defense thus interposed, which was decided against him.

It is urged, and perhaps with some reason, that the learned justice, in presenting his views upon the defense of insanity, so expressed himself as to convey to the jury an impression of his personal prejudice against that defense, or at least such a view of it as rendered it necessary for them to examine, with extreme caution and scrutiny, every element of it presented on behalf of the accused; and thus suggesting a difference between that and any other defense. In the case of *Sindram* v. *The People* (88 N. Y., 169), Justice Rapallo said : " Comments upon the testimony, so long as the judge leaves all the questions of fact to the jury, and instructs them that they are the sole judges of matters of fact, are not the subject of legal exception. It is desirable that the court should refrain, as far as possible, from saying anything to the jury which may influence them either way in passing upon controverted questions of fact, and perhaps comments on the evidence might be carried so far as to afford ground for assigning error. But in the present case, whenever its attention was called by the prisoner's counsel to any part of the charge which he considered as an infringement upon the province

of the jury, the court promptly and clearly withdrew the remarks objected to and emphatically reminded the jury that they alone had the right to determine the facts."

But the court held in that case, inasmuch as the observations complained of were promptly withdrawn, and the jury instructed emphatically that they alone had the right to determine the fact, the judgment should not be interfered with. The same features mark this case. Although the learned justice presiding would seem to have had very decided views not only in regard to the defense of insanity, the ease with which it might be simulated, the comparatively small reliance to be placed upon individual testimony, and the fact that expert testimony had repeatedly been criticised and gravely, because, generally speaking, experts are employed just as advocates are, to support a theory, he left the whole question to the jury, expressing his admiration for the medical gentlemen examined on the part of the accused, who had rendered their services in the case without compensation.

It is impossible for us to say, however, that the verdict was against the weight of evidence, nor can we say that the charge of the learned judge was in antagonism to the established rules. For these reasons the accused can derive no benefit from the contention already considered. We have examined this case with great care and attention and find that no other exception was taken or presented for our consideration, which would justify us in disturbing the verdict appealed from. We have not discovered in any of the propositions urged on the part of the accused, therefore, any reason why a new trial should be granted. The defense of insanity was rejected by the jury upon a conflict of evidence on the subject, and it was the only defense interposed and, indeed, as developed by the record, the only defense that could be interposed by which the accused could hope to be relieved from the consequences of the crime he committed, which was long meditated and most mercilessly executed.

The judgment must be affirmed.

DAVIS, P. J.:

I concur in the opinion of my brother BRADY, in so far as its results depend upon the following propositions discusssed so ably by him:

*First.* That there was no error in overruling the several challenges because, on the testimony of the challenged jurors, the court properly held that no existing bias was shown that disqualified either of them to sit in the case.

*Second.* That the existence of a prejudice or bias in the mind or opinion of a juror against any supposed or proposed defense is not such a one as is a proper legal basis of a challenge to the favor. Inquiries on such subjects may properly be allowed or made of a juror, under control of the court, for the purpose of determining whether a peremptory challenge shall be interposed, but beyond that they, as shown by my brother BRADY, are quite immaterial. The Criminal Code now regulates the subject of challenges for opinions held or expressed as to the guilt or innocence of the accused, and relieves the court from the absurdity of shutting out intelligent jurors who declare on oath that they believe themselves capable of trying and deciding the case, upon the evidence given before them, notwithstanding such opinions. It would be as proper, I think, to incapacitate a juror because he declared he had a prejudice against the crime charged in the indictment, as it would because he avowed he had a prejudice against a defense that may be interposed to it.

*Third.* That the administering of the oath to *each* juror, as he was found competent, was a lawful mode of swearing the jury, and the oath thus taken by each precluded a subsequent peremptory challenge of him.

*Fourth.* That the reswearing of the jury as a body, at the request of the defendant, did not alter his rights in respect of peremptory challenge.

These conclusions of my brother BRADY dispose of all the material questions of the case and justify his conclusion that the judgment should be affirmed, and upon them I concur in that conclusion.

Present — DAVIS, P. J., and BRADY, J.

Judgment affirmed.