VAN ALSTYNE and others, ex'rs &c., *v.* P. E. VAN ALSTYNE.

A testator, by his will, executed in 1850, after giving certain real and personal estate to his son P. E., ordered him to pay the testator's debts, and to pay an annuity to his brother John, for life. He gave other real and personal property to two other sons, Hugh and James, and then directed as follows: "I release and acquit all and each of my children from any charge I have made against them, or either of them." In March, 1855, he executed a codicil to the will, by which he revoked the direction to P. E. to pay an annuity to John, and also the order to pay debts. The testator died in 1857, owing no debts, and possessed of considerable personal estate, including two notes executed to him by P. E., the one dated in November, 1854, and the other dated in April, 1856. *Held,* that the words of the will, "from any charge *I have made,*" showed an intention on the part of the testator to limit the release to charges existing at the time when the will was executed. But that the codicil amounted to a republication of the whole will, not revoked by the codicil, and must be held to speak, in regard to the release of charges, as of the time of the execution of the codicil.

*Held, also,* that the words of the will, releasing the testator's children from "any charge I have made against them, or either of them," could not be held applicable to promissory notes, so as to release the notes of P. E. held by the testator.

APPEAL from a judgment of the Supreme Court, in an action brought to recover the amount of two promissory notes executed by the defendant to the plaintiffs' testator, of which the following are copies:

"$1157. For value received, I promise to pay Adam Van Alstyne, or bearer, eleven hundred and fifty-seven dollars, with interest from date. Stuyvesant, November 1, 1854.

P. EDWARD VAN ALSTYNE."

"$1000. One year after date, for value received, I promise to pay Adam Van Alstyne, or bearer, one thousand dollars, with use. Stuyvesant, April 1, 1856.

P. EDW'D VAN ALSTYNE."

[Indorsed.] "1857, April 6. Received seventy dollars, for one year's interest on this note, to 1st inst."

The only defense relied upon was, that the notes were released by the will of the payee, Adam Van Alstyne.

On the trial, before Mr. Justice PECKHAM, without a jury, at the Columbia circuit, in September, 1860, in addition to the giving of the notes, the following facts were found, as certified by said justice, viz: That on the 29th of June, 1850, the testator made his last will and testament, whereby, after giving certain real and personal estate to his son, (the defendant,) he ordered him to pay the testator's debts, and to pay an annuity to his (defendant's) brother John during his natural life; he gave other real and personal property to two other sons, Hugh and James, and then directed as follows: "I release and acquit all and each of my children from any charge I have made against them, or either of them."

On the 20th of March, 1855, he made a codicil to the will, by which he revoked the direction to the defendant to pay an annuity to John, and also the order to pay the testator's debts. He stated in the codicil that he had made other provision for his son John. In no other respect did the codicil alter the will. On the 21st of May, 1857, the testator died, owing no debts, and possessed of personal estate to the amount of about seven thousand dollars, and leaving his said four sons his only children and heirs at law. Several years prior to the making of the will, the testator had conveyed a farm to his son Hugh. The testator had been a farmer up to within two or three years of his death, during which latter years he had done no business except the taking care of his property. A residuary clause in the will gave his personal estate, not otherwise disposed of, to his sons Hugh and James.

On these facts the said justice found that there was due to the plaintiffs the amount of the two notes, with interest, for which amount he ordered judgment. The defendant's counsel excepted to this finding. There was also an exception on the part of the defendant to a refusal, by the justice on the trial, to allow the defendant to show by his own oath

that the note for $1157 was given by him to the testator, on his purchasing from the testator the identical personal property given to him by the will.

The judgment, entered in pursuance of the foregoing directions, was affirmed by the general term of the Supreme Court, and the defendant brought the present appeal.

*John H. Reynolds,* for the appellant.

*John K. Porter,* for the respondents.

SELDEN, J.   Although, as a general rule, a will of personal property is held to speak as if made at the time of the death of the testator, yet, where there is any thing in the nature of the bequest, or in the language in which it is made, to show that the testator intended to confine his gift to the subject of the bequest as it existed at the time of the making of the will, its construction will be governed by such intention. (8 Paige, 116.)   Words of present tense have often, though not uniformly, been held thus to limit the subject of the gift. (1 Jarman on Wills, 278, 279.)   My interpretation of the present will is, that the words, "from any charge *I have made*," show an intention on the part of the testator to limit the release to charges existing at the time when the will was executed.

A codicil to a will, however, amounts to a republication of the whole will, not revoked by the codicil, and under the interpretation above given to its language it must be held to speak, in regard to the release of charges, as of the time of the execution of the codicil.   (1 Williams on Exec'rs, 175; 1 Hill, 590.)   There is a peculiar propriety in the application of that rule to the present case, inasmuch as the codicil, by revoking "all that part of the sixth clause" of the will which provided for the payment of the testator's debts by his son Edward, revoked the whole of the sixth clause, excepting the provision releasing all charges which he had made against his

children; showing, therefore, a clear intention on his part to keep that provision in force and to have it speak as of that date.  The codicil was made March 20, 1855, after the execution of the first note, and that note at least was canceled, if the terms of the release were broad enough to ·include promissory notes.

Without attempting to define precisely what claims would be embraced by the words used by the testator, "any charge I have made against them, or either of them," I am of opinion that they can not be held applicable to promissory notes. An interpretation which should make the release include notes, would of necessity extend it to all debts and liabilities of the children to the testator.  If it was the intention to make the release thus general, no reason can be given why general words were not used, instead of the restrictive ones which were employed.  This argument derives additional force from the use, in the previous sentence, of such general words, viz. "all my just debts," in the clause directing the payment of the testator's debts by this defendant.  It is said that this interpretation of the clause in question renders that clause nugatory, as there were no charges upon which it could operate if it did not embrace the notes.  Such may be the result of our interpretation, as it does not affirmatively appear that there were any such charges, but as it is not proved or found that there were none, I·think we can not, consistently with the rules heretofore adopted, assume as an established fact their non-existence.  (21 N. Y. Rep. 550, 551, 552; 22 id. 324.)  But if that fact had been affirmatively established, I should have still held that the release did not include · promissory notes, because if notes only were to be released, the expression of that fact, simply, would have been so much easier and more natural than the language actually used, that the adoption of the present phraseology would, in that case, be unaccountable.

The only remaining question relates to the rejection of the defendant as a witness, to prove the consideration of one of

the notes.    The limitation upon the right of a party to tes-
tify in his own behalf, as the law stood at the time when this
trial was had, was as follows:    "A party shall not be exam-
ined against parties who are representatives of a deceased
person, in respect to any transactions had personally between
the deceased person and the witness." (Code, § 399, as
amended in 1860.)    The testimony offered to be given
related to a transaction had personally between the testator
and the witness, and was therefore directly within the prohi-
bition of the statute.

The Judgment should be affirmed.

All the Judges concurring,

Judgment affirmed.