CAROLINE M. ROBINSON, Appellant, *v.* KATHARINE T. MARTIN et al., as Trustees under the Will of MARY J. MARTIN, Deceased, et al., Defendants, and KATHARINE T. MARTIN et al., Respondents.

Will — when intention of testator is apparent from terms of will and relevant facts and circumstances, such intention must prevail unless against public policy or some positive rule of law — when trust for son payable to unmarried daughters at his death does not create condition in restraint of marriage.

Precedents and rules, frequently, have but slight value in interpreting wills, for those instruments are rarely, and, in the nature of things, are not likely to be, similar in terms. When the testator's intention is obscure, resort to them may be helpful in ascertaining it. Where, upon inspection of the will and upon a consideration of relevant facts and circumstances an intent is apparent, all rules to the contrary must yield, provided that intent does not offend against public policy, or some positive rule of law. It is only where the will fails to express, or to disclose, an intention that we must resort to the rules which the decisions have established.

A testatrix bequeathed a share of her estate in trust for the support of her son during his life, and " Upon the death of my said son I give, devise and bequeath the said share to my unmarried daughters in equal shares." *Held,* that the plan of the will, its language and the situation point to the son's death as the event in time which was to determine what daughters should take; that is to say, those at that time unmarried; that the testatrix, in disposing of her son's share, at his death, made a distinction between her daughters, as conditions existed at the time, and gave it to those then unmarried. There is no evidence of an intention to prevent their marriage, and there is no condition in restraint of marriage.

*Robinson* v. *Martin,* 138 App. Div. 310, affirmed.

(Argued November 15, 1910; decided December 6, 1910.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 2, 1910, which reversed an interlocutory judgment of Special Term construing the will of Mary J. Martin, deceased.

The facts, so far as material, and the question certified are stated in the opinion.

*Charles H. Beckett* and *Charles E. McMahon* for appellant. · The words " upon the death of," " from and after the death of," " at the death of," or any like expression relating to the termination of a life estate by the death of a life tenant or life beneficiary, followed by a devise or bequest of a remainder in equal shares, do not postpone the vesting of the estate in remainder until the death of the life tenant or life beneficiary, but rather refer to the time when the remaindermen will become entitled to the estate in possession. (*Livingston* v. *Greene,* 52 N. Y. 118 ; *Bergmann* v. *Lord,* 194 N. Y. 70 ; *Hersee* v. *Simpson,* 154 N. Y. 496 ; *Corse* v. *Chapman,* 153 N. Y. 466 ; *Connelly* v. *O'Brien,* 166 N. Y. 406 ; *Nelson* v. *Russell,* 135 N. Y. 137 ; *Matter of Tienken,* 131 N. Y. 391 ; *Ackerman* v. *Gorton,* 67 N. Y. 63 ; *Matter of U. T. Co.,* 179 N. Y. 261 ; *Matter of Oakley,* 67 App. Div. 493 ; *Matter of Kaufman,* 131 N. Y. 620 ; *Matter of Brown,* 154 N. Y. 313.) The Appellate Division erred in applying a condition in general restraint of marriage. Such conditions are contrary to public policy, and if existing would create an intestacy. (*Hogan* v. *Curtin,* 88 N. Y. 170 ; 1 Story's Eq. Juris. [13th ed.] §§ 280, 283 ; *Morley* v. *Rennoldson,* L. R. [1 Ch. Div. 1895] 449 ; *Keily* v. *Monck,* 3 Ridgeway [Irish], 205.)

*Thomas Thacher* and *George A. Ellis* for respondents. Even if the clause in question be read by itself alone, without the light thrown upon it by the change made before execution or by the rest of the will, the only natural conclusion is that by " my unmarried daughters " the testatrix meant those who should be unmarried at the son's death. The fact that in the clause as drawn the phrase was " my surviving daughters," the word " unmarried " being substituted for " surviving " immediately before execution, strongly enforces such conclusion. (*Teed* v. *Morton,* 60 N. Y. 502 ; *Matter of Smith,* 131 N. Y. 239.) The construction contended for herein is not barred by any rule of construction. (*Roosa* v. *Harrington,* 171 N. Y. 341 ; *Matter of Tienken,* 131 N. Y.

391; *Matter of Young*, 145 N. Y. 535; *Matter of Crane*, 164 N. Y. 71; *Matter of Allen*, 151 N. Y. 243; *Matter of Baer*, 147 N. Y. 348; *Delaney* v. *McCormick*, 88 N. Y. 194; *Teed* v. *Morton*, 60 N. Y. 502.)

GRAY, J. This action was brought to have a clause of the will of Mary J. Martin judicially construed; by which a share of her estate upon the decease of a child, for whose benefit during his life it was to be held in trust, was given to testatrix' "unmarried daughters in equal shares." The Appellate Division has certified the question for our review whether the clause should be construed "to include all of the daughters of the testatrix, who were unmarried at the date of her death, or only such of them as were unmarried at the date of the death of her son, the life beneficiary." Upon this question the learned justices of that court have divided in opinion; the majority holding that only the daughters unmarried at the time of the death of her son were intended and reversing, thereby, a decision of the court at Special Term, sustaining the other contention. It must be conceded, therefore, that the question is one which admits of serious argument for the one, or the other, view.

As the will is constructed, I think it is quite possible to discover strong evidences of a testamentary intent, which becomes clear, when we consider, in connection with the provisions of the will, the situation of the family. At the time of making her will, in 1894, the testatrix was a widow. She had several children; a son, who was feeble-minded and unable to take care of himself, and six daughters, the oldest of whom was married. The ages of the five unmarried ones ranged from 19 to 31 years. Two years after executing the will, the testatrix died, leaving a large estate, and, at that time, there had been no change in the family relations by other marriages. The son died in 1908 and intermediate the mother's death and that event three daughters had married. If the contention of the plaintiff, appellant here, is correct, then the distribution of the son's share should be made to

11

and among her four sisters and herself, who were unmarried at her mother's death, and that contention, as it is claimed, is supported upon the theory that the gift of the share to them was immediate and its enjoyment in possession, merely, postponed. The plan of the will is not involved in any obscurity. After providing for the payment of debts, by the second paragraph, the testatrix gives all of her property to her executors and trustees upon certain trusts. In the first subdivision of the paragraph, she declares it to be her " wish that her unmarried daughters, or such of them as desire to live together, with my son John C. Martin, shall live in one household, whether at my present home, or elsewhere." She directs the house in which they had been living to be kept in repair and the taxes and insurance to be paid, during the lives of the two youngest of her surviving daughters, " but only so long as any of my daughters remaining single may choose to make it their home." A trust fund of $20,000 is to be reserved; the net income of which is to meet those expenses. She further provides, if her " unmarried daughters, or such of them as desire to live together with my son," prefer to live elsewhere, that her house and the fund for its maintenance, if already reserved, should fall into the residuary estate. Thereupon, " for the purpose of providing a suitable residence " for them, a fund of $50,000 was to be set apart from the residuary estate, or, if after its distribution, from the proceeds of the sale of the house, during the lives of the two youngest of her daughters, which was to be applied to the purchase of a satisfactory residence; the balance unexpended to be invested and the income to be used in meeting the expenses of keeping the house in good order and in paying the taxes, insurance, etc. Upon the death of the survivor of her two youngest daughters, the house and the trust fund were to be " divided in the same manner as her residuary estate." The contents of the " home," thus provided, were to be divided among her surviving children equally. In the second subdivision of the paragraph, she creates a trust for the benefit of her son, during his life, in one share, " which

share shall be the proportionate part which he would receive of my estate, in view of the number of my children who may survive me and of my children who may have died before me leaving lawful issue me surviving." She directs the net income of the share so held in trust to be applied to her son's use and for his proper support, and then follows the clause under consideration, which reads: "and upon the death of my said son I give, devise and bequeath the said share to my unmarried daughters in equal shares." Before the execution of the will, the word " unmarried" was substituted by the testatrix in the draft for " surviving." Finally, in the third subdivision of the second paragraph, she provides that the residue of her estate should be held in trust during the lives of the two youngest of her surviving daughters, but not beyond the period of ten years, and that the net income should be paid in equal shares to her children, " except her son John;" the share of any deceased child to be applied to the use and support of her issue, if any, surviving. Upon the expiration of this trust, the trust estate is given to her " children, (other than her son John), in equal shares, *per stirpes.*"

From this review of the testamentary provision made for the children of the testatrix, it appears that in two respects, only, does she make any distinction between them in disposing of her estate. Her son's share is to be held in trust and she makes the disposition of it upon his death. For him and her unmarried daughters she provides for the maintenance of a common home, and the unmarried daughters are to have the son's share upon his death. The reason in each case would seem to be clear. The son was unable to take care of himself and the daughters, who were unmarried, would not have that protection and the additional means for support, which marriage is usually presumed to bring. These cases, evidently, appealed to the mother's mind in making her will and her provisions should be read in that light. That she carefully considered her words appears from the erasure in the draft of the word " surviving," in the clause which dis-

poses of the son's share in favor of her daughters, and the substitution of "unmarried." I think the circumstance has its significance. "Surviving daughters" might have comprehended all of her daughters, who outlived her son, and that, evidently, she did not intend. In changing the expression to "unmarried daughters," she limited the number of those who were to take and the question of the case arises : to what time did the word "unmarried" refer ? In my opinion, the plan of the will, its language and the situation point to the son's death as the event in time, which was to determine what daughters should take ; that is to say, those at that time unmarried. In the work of judicial construction, we cannot, of course, predicate certainty of our conclusions as to intent. At the most, we can, and we should, give that construction to a will, which has "in its favor the balance of reasons and probabilities." (*Weeks* v. *Cornwell,* 104 N. Y. 325, 336.) Precedents and rules, frequently, have but slight value in interpreting wills ; for those instruments are rarely, and, in the nature of things, are not likely to be, similar in terms. When the testator's intention is obscure, resort to them may be helpful in ascertaining it. Where, upon inspection of the will and upon a consideration of relevant facts and circumstances, an intent is apparent, all rules to the contrary must yield ; provided that intent does not offend against public policy, or some positive rule of law. It may well be that some of the rules of construction require a greater force of intention to control them ; but if it be found in the instrument, it should be followed. This will furnishes, in my judgment, a case of such force of intention as to make it more probable, if not certain, that, in the clause under consideration, testatrix was referring to the son's death as the period for ascertaining the persons, who should be entitled to take his share. The words "upon the death of my son" are, of themselves, not controlling ; but when read with the context of the whole second paragraph of the will, they appear to have a determinative power of definition.

As it has been suggested, perfect equality was intended

between the testatrix' children ; except as to the restriction upon the son's possession of his share, the eventual right thereto of the unmarried daughters and the provision for a home for them. The distinction in favor of unmarried daughters must be carefully noted. They were of marriageable age and their mother shows her appreciation of the fact ; for, in providing for the maintenance of the home, it is to be " only so long as any of my daughters *remaining single* may choose," etc. When any one of them married, she ceased to be entitled to the benefit of that provision. During the trust period, the unmarried condition of the daughter determined her right to share in the provision for the home. They and the incompetent son were to live together in the house and that situation is carried along in the mother's mind, by clear inference from the language, and influences her in preferring those of her daughters who are still unmarried upon his death as donees of his share. It is very significant that, while the trust provision for the maintenance of a home ceases with the termination of the trust period, the testatrix contemplates that the son and unmarried daughters will continue to live together. In directing an equal division of the proceeds of the sale of the house and trust fund, she adds a direction that " all the contents of such house shall be at the disposal of my said daughters, so long as they, or any of them, have a home together, (with my son John C., if still living)." This bears strongly upon the probability of her intending only those unmarried daughters to take the son's share, who remained single at his death ; as an exceptional provision in their behalf.

The appellant's argument that the clause in question should be construed as giving his share to the daughters unmarried at the time of the testatrix' death suggests conclusions, which are inharmonious with her general plan for equality of division, and these have been well illustrated by counsel for the respondents. The testatrix contemplated that her unmarried daughters might marry and that might be, of course, either before, or after, her death. Adopting the appellant's contention, she must have meant to exclude a daughter who might

marry a month before her death and to include one who might marry the month after. I cannot think that she intended to make so unreasonable a distinction; it is too improbable. ˙ Again, adopting the appellant's contention, where is the reasonableness of cutting off testatrix' oldest daughter, who was married when she made her will? Nothing was proved, which would justify inferring an intention to deprive her of the right to share with her sisters upon the falling in of the son's trust estate, if those marrying before his death were to share in it. Assuming the testatrix to have supposed that no other daughter would marry before she died, would she then have intended her son's share to go to her daughters who were unmarried at her death and to cut off the married daughter? Why should daughters marrying after her death be entitled to the son's share and not the previously married daughter? When tested by the results possible under the appellant's contention, I am brought to the conclusion that it is unsound and that it is opposed to the general plan of the will.

It is not necessary to hold that a bequest was intended to a class, whose members existing at the time of the happening of the event specified, alone, may take; it is only necessary to decide that the intention of the testatrix, in disposing of the son's share, is manifest to make an exception to the general plan of equality upon which she had distributed her estate, in favor of those daughters surviving their brother, who had remained single. She gives his share upon his death to her daughters *then* unmarried; because the same need would still exist for exceptional consideration that appears to have moved her previous provisions. It would be difficult to find a reason, having any support in the testamentary plan, for construing the gift as one to the daughters unmarried at her death, and, as it has been suggested, it would create a distinction against her previously married daughter, not warranted by any facts proved with reference to her, or to her family and worldly relations. She was married and that is all we know. There is no need to have resort to any rules of

construction; for the rule of intention overrides all such. It is only where the will fails to express, or to disclose, an intention that we must resort to the rules, which the decisions have established. (*Matter of James*, 146 N. Y. 78, 100.)

I do not think that there was any vesting of the remainder in the son's share in the daughters unmarried at the death of the testatrix. If vested interests, they would, nevertheless, be subject to be divested by marriage before the son's death. If the particular form of words was to be considered, I should find no great difficulty in finding the intention to be to give the share to the daughters unmarried at the death of the life beneficiary; to which conclusion the fact of the substitution of the word "unmarried" for "surviving" in the clause comes in aid. (See *Teed* v. *Morton*, 60 N. Y. 502; *Matter of Smith*, 131 ib. 239; *Lyons* v. *Ostrander*, 167 ib. 135, 140.)

Nor does the suggestion that there was any condition in general restraint of marriage appear to me to have any force I find no condition, directly or indirectly, imposing any absolute injunction to celibacy. I cannot discover any condition in terrorem, or any purpose to impose any restraint on a daughter's marriage. There is no bequest upon condition that her daughters should not marry; or condition subsequent, the breach of which might work a forfeiture of interest. If the bequest had been "upon the death of her son to her unmarried daughters, or, in the event of any one marrying, then to those remaining unmarried," we would have a different case. Such a case would show an intention that those unmarried at the death of the testatrix were to take their brother's share; provided none married meanwhile. We have no such case; but, merely, one where the testatrix, in disposing of her son's share, at his death, made a distinction between her daughters, *as conditions existed at the time*, and gave it to those then unmarried — a distinction, as before discussed, influencing her previous provisions. There is no evidence of an intention to prevent their marrying and, unless such an intention shall clearly appear, a will should not be construed as impos-

ing any such condition, upon reasoning as to the possible effect of a gift, made as was the one in question.

In a note on page 276 of the 13th edition of Story's Equity Jurisprudence, the learned editor discusses, with considerable elaboration, this rule which was taken from the civil law by the ecclesiastical courts. He reasons that, when the law and chancery courts came to look into the intention of the testator, the virtual abandonment of the Roman rule was reached. I quote : "when at last English judges reached the point of declaring that the real question in a particular case was whether a testator intended to discourage marrying or not, (*Jones* v. *Jones*, 1 Q. B. D. 279, 281, Blackburn, J.), and to decide the case as in *Jones* v. *Jones*, upon the answer to that question, a step only remained to declaring that the donor's intention should govern." He finds in the American cases, a disposition "against adopting broadly the doctrine that conditions in restraint of marriage are void," and continues, " the result is that where the courts can discover in the written instrument  *  *  *  any other intention than that of a clearly designed discouragement of marriage, they will respect that intention.  *  *  *.  When it has come to this, that nothing is left of the Roman rule except where a clear design to discourage marrying is expressed, as held in *Jones* v. *Jones*,— where, though the obvious and natural effect of a particular gift is to prevent marriage, that fact is disregarded unless there is a plain and real intent, — it seems quite time  *  *  *  to drop a rule altogether which never had a sufficient reason for its existence in the English law, and to permit the case to stand on the donor's intention, whatever it may be. Indeed the reasoning of the better authorities comes quite to this result. (*Stackpole* v. *Beaumont*, 3 Ves. Jr. 89; *Commonwealth* v. *Stauffer*, 10 Barr. 350.)  *  *  *  When, however, the intention is found, it is submitted as a legitimate conclusion of the reasoning of the judges against the Roman rule, if not as the natural effect of the cases themselves, that that intention should be allowed to prevail." I think the view taken of the rule com-

mends itself to the judgment, as having the weight of reasoning in its favor.

For these reasons, I think the order should be affirmed and that the answer to the question certified should be that the gift to the unmarried daughters included only such as were unmarried at the date of the death of the life beneficiary.

CULLEN, Ch. J. (dissenting). The controversy in this case is over the disposition of a fund of about $70,000 held in trust for the support of a son during life, under the second paragraph of the second clause of the testatrix's will. The clause concludes: " Upon the death of my said son I give, devise and bequeath the said share to my unmarried daughters in equal shares." I concur in the opinion of the Special Term and in the dissenting opinion of INGRAHAM, P. J., in the Appellate Division, that the persons who constituted the " unmarried daughters " were to be ascertained at the death of the testatrix (if not at an earlier time), and not at the death of the son, the equitable life tenant. The general rule is that the law favors vested remainders rather than contingent ones. (*Livingston* v. *Greene,* 52 N. Y. 118; *Matter of Brown,* 154 id. 313.) Where there is no immediate gift, but only a direction to pay, divide or distribute at a future period, the bequest is contingent; not so, however, where there is such a bequest as is found in this case. This rule and the exception are both stated in *Matter of Crane* (164 N. Y. 71, at p. 77), and the rule readily yields to the exception where its effect would be to divest the share of any issue of a testator. Such was the case in *Goebel* v. *Wolf* (113 N. Y. 405); *Matter of Tienken* (131 id. 391); *Matter of Young* (145 id. 535), and *Matter of Brown* (*supra*), in none of which was there even an immediate gift, yet in each it was held that death before distribution did not divest. I shall not pursue the discussion further, because it is very clear to me that if we assume the construction of the will adopted by the Appellate Division to be the correct one, the judgment below is erroneous for another reason.

The majority of the Appellate Division held that the remainders vested at the time of the testatrix's death in her then unmarried daughters, subject as to any of them to be divested by her marriage previous to the death of the son, and, therefore, awarded the fund to those daughters exclusively who remained unmarried at the son's death. The result reached was erroneous because the condition that a daughter should by marriage forfeit the remainder was void. The text writers agree that conditions in general restraint of marriage, except that of widows or widowers, are void as against public policy. (1 Story's Eq. Juris. §§ 274--290; 2 Pomeroy's Eq. Juris. § 993; 2 Jarman· on Wills, p. *44 *et seq.;* 2 Williams on Executors, p. 1275.) This doctrine seems to prevail everywhere, and as formulated by Judge Story has been accepted by this court as the law of the state in *Hogan* v. *Curtin* (88 N. Y. 162). There is some difference between the text writers as to the effect of the doctrine on devisees of real estate, but none as to its effect on bequests of personalty. The doctrine is tersely stated by Professor Pomeroy (2 Pomeroy's Eq. Juris. [3d ed.] p. 1683): "If a condition is precedent and annexed to a gift of land, it operates as at the common law; when broken, it prevents the estate from vesting, whatever be its nature; when annexed to a gift of personal property, if general or unreasonable, it is wholly void, and the gift takes effect; if partial and reasonable, it is operative. When a condition is subsequent and annexed to a gift of land, if general, it is void, and although broken, the estate of the donee continues; if partial and reasonable, it is operative, and on its breach the estate of the donee is defeated. When a subsequent condition is annexed to a gift of personal property, if general, it is void; if partial and reasonable, and there is a gift over, it is operative, and upon its breach the interest of the first donee ceases and the gift over takes effect; but, if there is no gift over, then the condition is said to be *in terrorem* merely, and is inoperative." This accords with the view taken by Judge Story, but Mr. Jarman seems to be of opinion that in a devise of real estate

a condition precedent will not prevent the devise from taking effect. In regard to the proposition that as to personalty, illegal conditions in restraint of marriage, whether precedent or subsequent, are void and inoperative, all are in accord. Judge Story says (§ 289): "If the condition regard real estate and be in general restraint of marriage, there, although it is void, yet, as we have seen, if there is not a compliance with it, the estate will never arise in the devisee. But if it be a legacy of personal estate under like circumstances, the legacy will be held good and absolute as if no condition whatsoever had been annexed to it." ·

To constitute a condition in general restraint of marriage, it is not necessary that the restraint should be absolute, universal and continue during the whole lifetime of the legatee. If the restraint is unreasonable, it is in general restraint within the rule. Many special restraints have been upheld, such as an inhibition against marrying a particular individual, or one of a particular race. These are not necessary to consider, as in the case before us, as long as the restraint continues it is unqualified, forbidding any marriage. But it is also well settled that a condition in restraint of marriage must be reasonable in point of time. Thus, Judge Story says (§ 283): "It is obvious that restraints as to time, place, or person may be so framed as to operate a virtual prohibition upon marriage, or at least upon its most important and valuable objects. As for instance a condition that a child should not marry until fifty years of age; or should not marry any person inhabiting in the same town, county or state; or should not marry any person who was a clergyman, a physician or a lawyer, or any person except of a particular trade or employment; for these would be deemed a mere evasion or fraud upon the law." In *Hogan* v. *Curtin* (*supra*) Andrews, Ch. J., said: "It is otherwise of conditions in general restraint of marriage, they being regarded as contrary to public policy, and the 'common weal and good order of society.' But reasonable conditions designed to prevent hasty or imprudent marriages, and to subject a child, or

other object of a testator's bounty, to the just restraint of parents or friends during infancy, or other reasonable period, are upheld by the common law." (p. 170.) In the case in hand the inhibition against marriage was to continue during the lifetime of the testatrix's son. It was entirely possible that he might survive all the daughters and thus each be restrained during life. As matter of fact he survived his mother twelve years. At the time of her death the eldest of the unmarried daughters was 33; the youngest 21 years of age. Therefore, when the eldest daughter first became relieved from the requirement of celibacy she had reached an age at which the great majority of women become incapable of child bearing (Taylor's Med. Juris. pp. 736, 737; 2 Woodhouse & Becker's Med. Juris. 649) and other daughters were closely following her. A restraint until such a period is plainly inconsistent with public policy, as one of the great objects of matrimony is the birth of offspring.

I have not discussed the so-called doctrine of "*in terrorem*" as it is not necessary to the disposition of the case. There is evidently a misunderstanding of that doctrine. It has no application to invalid restraints on marriage which, as already said, in the case of personalty are inoperative, whether precedent or subsequent. The doctrine applies only to valid subsequent conditions, and is to the effect that even such a valid condition will not operate to defeat a bequest unless there is a gift over in case of breach of condition. In other words it is a doctrine of the courts to prevent the operation of valid conditions. (*Hogan* v. *Curtin, supra.*) It might be argued that as the legacies vested subject only to be divested by marriage, the gift to the class who should be unmarried at the time was not a sufficient gift over, and, therefore, the condition was inoperative, even if good. But this is unnecessary to pass upon. The statement of Mr. Jarman that a bequest during celibacy, if "for the purpose of immediate maintenance, will not be interpreted maliciously to a charge of restraining marriage" (2 Wills, *886) is misapprehended. It is quoted from the leading case of *Scott* v.

*Tyler* (2 Dickens, 712), decided by Lord THURLOW. There the chancellor said, citing Godolphin, that " the use of a thing may be given during celibacy ; for the purpose of intermediate maintenance, will not be interpreted maliciously to a charge of restraining marriage." This doctrine still prevails, certainly in England, and in at least some of our states, if not generally. (*Estate of Bruch*, 185 Pa. St. 194.) But, again, this rule has no application whatever to a gift of the principal, but simply to the use or income of the bequest. This distinction is clearly pointed out in the last case cited. Not a penny is here given to any of the legatees for their support and maintenance during celibacy, but the whole fund is bequeathed absolutely if they remain unmarried until the death of the son.

We are now brought to the final argument that the bequest to the daughters who may be unmarried at the time of the son's death is not a condition at all that any who may marry before that time shall not receive her share. I cannot understand this reasoning. It is said that this is not a gift to a class. I am inclined to that opinion myself. But it is certainly either a bequest to a class or to designated legatees, for I know of no other character of bequest, and the result in either case is the same. If the appellants here had not married they would have shared at the son's death in the fund held in trust for him. By their marriage they have forfeited their shares. Surely a bequest to any one if she be unmarried at a certain time is the same as a bequest if she shall not have married before that time. Otherwise the validity or invalidity of a restraint on marriage depends on the mere form of a phrase, as pointed out by Lord THURLOW in *Scott* v. *Tyler* (*supra*). The question, however, has been the subject of express decision. *Sterling* v. *Sinnickson* (2 Southard [N. J. Law], 756) was an action on a bond under seal to pay $1,000 in case the obligee was not married in six months from date. It was held that this was a condition in restraint of marriage and hence void. It was there argued that the obligation was simply to pay money on a subsequent contingency which a man had the

right to make.    To this the court said : " I think this is not
a correct view of the case.    Where the event, upon which the
obligation becomes payable, is in the power of the obligee, and
is to be brought about by his doing or not doing a certain
thing, it cannot be so properly called a contingency ; it is
rather the condition meritorious, upon which the obligation
is entered into, the moving consideration for which the money
is to be paid.    It is not, therefore, to be considered a
mere contingency."    Let us see what results the doctrine
contended for would lead to.    Suppose a testator having
a single daughter (and such might have been the case
of this testatrix, as all but one of the daughters might
have died intermediate the will and her own death), it
would follow that by marriage that daughter could not
share in the trust fund upon the decease of her brother and
the fund might have been given over to strangers.    While
if the phraseology of the will had been changed, and the will
had provided, if any daughter married before the death of
the son, then she should not take the fund, it would be void.
Is there the slightest difference in effect between these two
testamentary provisions, and is it not a mere question of phrase-
ology ?    Does it make any difference that instead of her leav-
ing a single unmarried child surviving, she left several ?    If
the testatrix could not provide in the case of a single child for
its forfeiture of the remainder by marriage, would she have
any greater power from the fact that there were several chil-
dren ?    If all the daughters had married prior to the son's
death, not one of them could have shared in the trust fund.
Such a provision is necessarily a condition in restraint
of marriage upon each.    If we assume that the bequest
was contingent, it would be of no importance, for, as already
said, it is settled law as to bequests of personalty that
invalid conditions precedent equally with those subsequent
are inoperative.

In a note by the editor of the last edition (13th) of Story's
Equity Jurisprudence (p. 276) it is suggested that little is left
of the doctrine of conditions in restraint of marriage.    This

suggestion, which is in opposition to the text as written by Judge Story, I think is not justified by the decisions. The general doctrine as stated by the judge seems to be generally accepted throughout the country. (*Vaughn* v. *Lovejoy*, 34 Ala. 437; *Shackelford* v. *Hall*, 19 Ill. 212; *Bostick* v. *Blades*, 59 Md. 231; *Pringle* v. *Dunkley*, 22 Miss. 16; *Dumey* v. *Schoeffler*, 24 Mo. 170; *Williams* v. *Cowden*, 13 Mo. 211; *Randall* v. *Marble*, 69 Me. 310; *Otis* v. *Prince*, 10 Gray [Mass.], 581; *M'Ilvaine* v. *Gethen*, 3 Wharton [Pa.], 575; *Hogan* v. *Curtin*, 88 N. Y. 162; *Graydon* v. *Graydon*, 23 N. J. Eq. 230, 236; *Hughes* v. *Boyd*, 2 Sneed [Tenn.], 512; *Phillips* v. *Ferguson*, 85 Va. 509; *Webster* v. *Morris*, 66 Wis. 366, 386.) I can find only one state in which it has been questioned, Georgia. (*Snider* v. *Newsom*, 24 Ga. 139.) Nor can I find any English authority to the contrary of the doctrine that a condition in general restraint of marriage is invalid, except in the case of the second marriage of widows or widowers. The authority on which the learned editor seems to principally rest the rule which he favors is *Jones* v. *Jones* (1 Q. B. Div. 279). He says, referring to the case cited, that the " English Judges reached the point of declaring that the real question in a particular case was whether a testator intended to discourage marrying or not." The devise under consideration in that case was to two women, the testator's sister Jemima and her daughter Mary during their lifetime, with the proviso that if Mary married she should lose her share and the same should be passed to other parties. The remark of the judge quoted above was clearly justified by the rule that has always prevailed and which, as before said, Thurlow quotes from Godolphin, that a bequest of the *use* of a thing during celibacy will be regarded as a provision for maintenance and not necessarily as a condition in restraint of marriage. This is made clear by reading the opinions, but the case has no application to a devise in fee or an absolute bequest.

In conclusion I should state what seems to me the true interpretation of the will. It is urged in support of the decision of the Appellate Division that it is unreasonable to

suppose that the testatrix intended to cut off any of her daughters who might marry intermediate the date of the will and her death, leaving those who might marry subsequent to her death to share in the fund. I concede this, but it seems to me equally hard to believe that the testatrix intended to cut off those who might marry possibly a few days before her son's death, while leaving the others at liberty to marry thereafter, for it appears on the face of the will in the first subdivision of this clause that the testatrix contemplated the possibility of some of her unmarried daughters not continuing to live with her son, and the bequest is made not at all on the condition that they take care of the son, but that they remain unmarried, and though any of them should desert the son, if she remained unmarried, still she would be entitled to a share in the gift. There is, however, another construction of the will. As a general rule a will speaks as of the time of the death of the testator, but a will may speak from the date of its execution. (*Van Alstyne* v. *Van Alstyne*, 28 N. Y. 375.) A class is defined in *Matter of Kimberly* (150 N. Y. 90): "In legal contemplation, a gift to a class is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number." (p. 93.) I think that the bequest is not to be considered as given to a class within this definition, or if to a class that the class was to be ascertained at the date of the will. In my judgment the use of the expression "my unmarried daughters" was merely to save a recital of each of them separately by name. In other words, it was a bequest to designated persons. (*Matter of King*, 200 N. Y. 189.) So considered the will is not only reasonable but lawful. It is unnecessary to dwell longer on this question, as the result is the same whatever construction of the will be adopted ; the condition in restraint of marriage being void, and none of the daughters having married intermediate the date of the will and the death of the testatrix.

The order of the Appellate Division should be reversed and the judgment of the Special Term affirmed.

VANN, WERNER and CHASE, JJ., concur with GRAY, J.; HAIGHT and WILLARD BARTLETT, JJ., concur with CULLEN, Ch. J.

Order affirmed, with costs.