In the Matter of the Accounting of STYRA M. BLUMBERG, as Administratrix C. T. A. of MARIUS W. WHEELER, Deceased.

Surrogate's Court, Chenango County, October 24, 1947.

*Edward C. Rowe* for Styra M. Blumberg and another, remaindermen.

*Charles Cunningham,* as administrator of the estate of Jerry Wheeler, deceased, and for Henry B. Wheeler, remaindermen.

BARNES, S. The will of the decedent duly probated on March 8, 1919, provided as follows:

"Second. I give, devise and bequeath to my wife, Harriet E. Wheeler, the use of all my property, both real and personal, for and during the time she shall remain my widow.

" Third. At the decease or re-marriage of my said wife, I give, devise and bequeath my said property, of which my wife is given the use, to my legal heirs, the same to be equally divided between them."

Harriet E. Wheeler qualified as executrix of the will and had possession of the property until her death on September 28, 1945. During these twenty-six years the legal heirs of the decedent changed materially. The construction of the will as to the shares of the estate, which the heirs take, is the question involved in this decision.

The difficulty here is the last few words of the third paragraph, "the same to be equally divided between them". If these words had been omitted, it so happens that the property would be divided in the same manner if it vested in the legal heirs at the death of decedent or at the death of the life tenant. At the death of decedent, his legal heirs consisted of a sister, and two nephews who were children of a deceased brother. The sister would have taken one-half interest and each nephew would have taken a one-fourth interest. Since that time one nephew died intestate and the other nephew is his sole heir. The sister has since died intestate, leaving one daughter, who in turn has since died intestate, leaving two children, Styra M. Blumberg and James C. Malone. Therefore, at the time of the death of the life tenant, the heirs of the decedent consisted of one nephew, one grandnephew and one grandniece, who are children of a deceased niece.

Therefore, if the title vested at the time of the decedent's death, the nephew took a one-fourth interest and has acquired by inheritance an additional one-fourth interest from his brother who has since died, making a one-half interest in the estate; and the grandnephew and grandniece have inherited the share which their grandmother took at decedent's death — so, they would take, combined, a one-half interest. On the other hand, if the heirs are determined as of the time of the death of the life tenant, the nephew would take a one-half interest, and the grandnephew and grandniece collectively would take the remaining one-half interest. (*Matter of Loglier,* 159 Misc. 194; *Matter of Watson,* 164 Misc. 940; *Matter of Strohmer,* 149 Misc. 219.)

As used in reference to the distribution of estates, the word "equal" or "equally" is often used to denote a pattern of distribution, and is often used "in equal shares per stirpes" (*Robinson* v. *Martin,* 200 N. Y. 159). This question has been recently discussed by the Surrogate of Kings County, in the *Matter of Thomas* (187 Misc. 45). I think there is evidence here of a purpose to maintain and preserve equality *among the stocks.* The testator left his property to his "legal heirs" and this implies a distribution per stirpes. If the life tenant had died simultaneously with the testator, the property would have passed to a sister, and two children of a deceased brother. I cannot believe that he intended to leave each nephew as much as he left his sister. This court in a transfer tax proceeding on July 2, 1919, in an order signed by Judge JAMES P. HILL, then Surrogate, assessed the tax per stirpes. I am, therefore, determining that the distribution to be made is in equal parts per stirpes and not per capita.

Having reached this conclusion it becomes immaterial whether the estate vested at the time of decedent's death, or twenty-six years later at the time of the death of the life tenant. This is a highly controversial question. Both arguments have been discussed in *Robinson* v. *Martin* (*supra*). However, in a recent case, *Matter of Wilson* (269 App. Div. 665, affd. 294 N. Y. 903), a very similar provision in a will was held to effect a vesting at the time of the death of the life tenant. It would facilitate the distribution of this estate to construe the will to vest the remainder at the time of the death of the life tenant; and I am so construing the will.

Objection is made to the expense account of the administratrix with the will annexed. She has submitted two items totaling $160 for trips from her home to Greene, New York,

made before she was appointed administratrix. These items are disallowed. Under date of April 8, 1946, she has charged $21 for a baby sitter and a similar item of $28 on May 21, 1946, and also a similar item of $33 on June 10, 1946. These items totaling $82 are disallowed.

Submit decree providing that Henry B. Wheeler is entitled to a one-half interest in the estate and that Styra M. Blumberg and James C. Malone are each entitled to a one-fourth interest in the estate, and disallowing expense account to extent of $242.