In the Matter of the Application of ABRAHAM PULIS et al., for an Order Authorizing the Sale of Certain Real Property Devised by WILLIAM J. PULIS, Deceased. MARTHA P. MERRION et al., Appellants; ELLA J. DANIELS et al., Respondents.

Will — word "children" defined — where testator directs the sale of certain real estate after the death of his son and daughter, the proceeds to be given one-half to the children of his son and one-half to the children of his daughter, the word so used does not include grandchildren, and the children of a deceased daughter of testator's daughter are entitled to no part of such proceeds.

1. The word "children" in common parlance does not include grandchildren, or any others than the immediate descendants in the first degree of the person named as the ancestor.

2. Where final division and distribution is to be made among a class, the benefits of the will must be confined to those persons who came within the appropriate category at the date when the distribution or division is directed to be made.

3. The testator left a will containing, among others, the following provision: "I further direct, authorize and empower my executors within two years after the decease of my two children, Abraham and Sarah, to sell my house for the largest amount that can be obtained for it, and divide the net proceeds of said sale, one-half the amount between the children of my son, Abraham Pulis, and the other half thereof between the children of my daughter Sarah Powles." By a previous clause in the will he had devised the use of the "house" to Abraham and Sarah for their mutual benefit. It was sold on their application pursuant to the Real Property Law, and the proceeds of the sale were deposited in a trust company under an order of the court. A division of the proceeds is now sought. Both Abraham and Sarah dying after the testator, left children them surviving. A son of Sarah died before his mother, leaving a widow and two children, both of whom were born after the death of the testator, who claim an interest in the proceeds of the sale of the house. It appears from the will that the testator did not intend to vest the title to the house in the children of Abraham and Sarah as of the date of his death; hence, the proceeds of the share of Sarah must

be divided between her children who were living at the time of her death to the exclusion of the widow and children of her deceased son.

*Matter of Pulis*, 175 App. Div. 884, modified.

(Argued January 15, 1917; decided February 27, 1917.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered October 15, 1916, which affirmed an order of Special Term directing the distribution of the proceeds of certain real property.

William J. Pulis died on the 22d of May, 1881, leaving a will which was duly admitted to probate. It is as follows:

"After paying all my lawful debts and funeral expenses, I give and bequeath to my sons-in-law, John H. Bogart and James Remsen, each the interest of Five hundred dollars during the term of his natural life, and I direct my executors to place the sum of one thousand dollars in two savings banks, five hundred dollars in each, and to pay the interest as above specified every six months; and I further direct that after the decease of the above named parties, $500 of said principal and whatever interest may be due thereon that time, shall be paid to the children of my son Abraham Pulis, share and share alike, and the other $500 of said principal sum, and the interest that may be due thereon, to the children of my daughter Sarah Powles, share and share alike.

"I further give and bequeath to Lettie Ann Demarest, daughter of Ann Marie and Daniel Demarest, $300, Three Hundred dollars. Also to Anna Griffith, wife of Isaac Vail, $200, Two Hundred dollars.

"I further give to my son Abraham and my daughter Sarah the use of my house, Number 428 West 33rd Street in the city of New York to be occupied or rented by them, for their mutual benefit; also all my household furniture, to be equally divided between them, but not sold, and also all the residue of money in banks, or elsewhere after

paying the sums as herein directed, to be equally divided between the said Abraham and Sarah.

" I further direct, authorize and empower my executors within two years after the decease of my two children, Abraham and Sarah, to sell my house for the largest amount that can be obtained for it, and divide the net proceeds of said sale, one-half the amount between the children of my son Abraham Pulis, and the other half thereof between the children of my daughter Sarah Powles; and in case the said executors shall have deceased before the time of said sale that the oldest of my son and daughter's children shall, and I hereby authorize and empower them to carry out my wishes as herein expressed.

" In conclusion I hereby appoint as my executors my son Abraham and my daughter Sarah, and in case of the decease of either, my grandson William to act for the deceased. I request that they may not be required to execute bonds for the fulfillment of said trust."

His son Abraham died November 13, 1912, and his daughter Sarah February 6, 1916, they having enjoyed the use of their father's property during their lives and the life of the survivor of them as provided by the will.

At the time of the death of William J. Pulis his son Abraham had two children. No other children were thereafter born to him and both of said children are living. At the time of his death his daughter Sarah had three children. No other children were thereafter born to her and two of said children are living.

Sylvester Powles, the third child of Sarah, died February 11, 1904, leaving a widow and two children, both of whom were born after the death of the testator. The real property of which the testator died seized was sold on the application of the said Abraham and Sarah as life tenants in 1912, pursuant to the Real Property Law, and the proceeds of the sale were deposited in a trust company pursuant to an order of the court.

A division of the proceeds of said real property is sought. The Special Term divided one-half thereof in equal parts between the children of Abraham Pulis and the other half thereof in three equal parts, one part thereof to each of the two children of Sarah Powles and the third part to the widow and two children of Sylvester, the deceased son of Sarah Powles. The children of Sarah Powles appealed therefrom and from the unanimous order of the Appellate Division affirming such order of the Special Term. (*Matter of Pulis*, 175 App. Div. 884.)

The division between the children of Abraham Pulis is not contested. The children of Sarah Powles claim that the widow and children of their deceased brother, Sylvester, are not entitled to participate in the division. No question is raised as to the division between the widow and children of Sylvester if the half of the proceeds of the real property representing the testator's daughter Sarah is divided into three instead of two parts.

*Albert R. Hager* for Margaret P. Zabriskie, appellant. The statutes as to vesting have no application. Testator made no gift except by division — hence no gift until division. (*Matter of Keenan*, 15 Misc. Rep. 368; *Vincent* v. *Newhouse*, 83 N. Y. 511; *Shipman* v. *Rollins*, 98 N. Y. 311; *Delaney* v. *McCormack*, 88 N. Y. 174; *Salter* v. *Drowne*, 205 N. Y. 204.) Testator used "children" in its primary sense and as a class. (*Palmer* v. *Horn*, 84 N. Y. 516; *Bisson* v. *W. S. R. R. Co.*, 143 N. Y. 125; *Matter of Baer*, 147 N. Y. 348; *Delaney* v. *McCormack*, 88 N. Y. 174; *Robinson* v. *Martin*, 200 N. Y. 159.)

*Lloyd Paul Stryker* for Martha P. Merrion, appellant. Where the only words of gift in a will are found in the direction to divide and pay at a future time the gift is future, not immediate; contingent, not vested, where the gift is of money (as in the case at bar), and the direction to convert the estate is absolute, the legacy given to a

class of persons vests in those who answer to the description and are capable of taking at the time of distribution. (*Matter of Crane*, 164 N. Y. 71; *Matter of Baer*, 147 N. Y. 354; *Delaney* v. *McCormack*, 88 N. Y. 174, 183; *Lock* v. *Lamb*, L. R. [4 Eq. Cas.] 375; *Leak* v. *Robinson*, 2 Meriv. 387; *Smith* v. *Edwards*, 23 Hun, 228; 1 Redfield on Wills, 393; 2 James on Wills [Randolph & Talcott's ed.], 457; *Vincent* v. *Newhouse*, 83 N. Y. 505; *Train* v. *Davis*, 49 Misc. Rep. 162; *Geisse* v. *Bunce*, 23 App. Div. 289; *Downing* v. *Marshall*, 23 N. Y. 366.)

*Stewart Chaplin* for Ella J. Daniels, respondent. This case does not fall within the subordinate rule that where there is no gift except by a direction to convert and distribute, the vesting is postponed. It does come under the equally well-established exception that where enjoyment of the gift is postponed to let in a life estate, or otherwise accommodate the estate, or wherever the testator's intent so appears, vesting takes place as of testator's death. (*Fulton Trust Co.* v. *Phillips*, 218 N. Y. 573; Fowler Real Prop. Law, § 40, rule III; *Murtha* v. *Wilcox*, 47 App. Div. 526; *Roosa* v. *Harrington*, 171 N. Y. 341; *Goebel* v. *Wolf*, 113 N. Y. 405; *Steinway* v. *Steinway*, 163 N. Y. 183; *Smith* v. *Edwards*, 88 N. Y. 92; *Matter of Tienken*, 131 N. Y. 391; *Matter of Young*, 145 N. Y. 535; *Matter of Brown*, 154 N. Y. 313; *Miller* v. *Gilbert*, 144 N. Y. 68.) The "children" take not as a class, but distributively, and absolutely. The word "children" has the same effect as if testator had mentioned each by name. (*Matter of Russell*, 168 N. Y. 169; *Matter of Brown*, 154 N. Y. 313; *Manhattan Real Estate Assn.* v. *Cudlipp*, 80 App. Div. 532; *Matter of Kimberly*, 150 N. Y. 90; *Canfield* v. *Fallon*, 26 Misc. Rep. 345; 43 App. Div. 561; 161 N. Y. 623.) The testator's intent to have the remainders vest absolutely at his death is clear. (*Matter of Russell*, 168 N. Y. 169; *Cammann* v. *Bailey*, 210 N. Y. 19; *Fulton Trust Co.*

v. *Phillips,* 164 App. Div. 498; 218 N. Y. 573; *Byrnes* v. *Stilwell,* 103 N. Y. 453; *Canfield* v. *Fallon,* 26 Misc. Rep. 345; 43 App. Div. 561; 161 N. Y. 623; *Matter of Brown,* 154 N. Y. 313; *Manhattan Real Estate Assn.* v. *Cudlipp,* 80 App. Div. 532; *Murtha* v. *Wilcox,* 47 App. Div. 526.)

*Alfred S. Brown* for Erva E. Davis et al., respondents. Under the will of William J. Pulis, deceased, the children of his daughter, Sarah Powles, who were living at his death, took at his death a vested remainder in an undivided one-half part of the premises No. 428 West Thirty-third street. (*Hersee* v. *Simpson,* 154 N. Y. 496; *Connolly* v. *O'Brien,* 166 N. Y. 406; *Matter of Bray,* 118 App. Div. 533; *Canfield* v. *Fallon,* 26 Misc. Rep. 345; 43 App. Div. 561; 161 N. Y. 623; *Davidson* v. *Jones,* 112 App. Div. 254; *Haug* v. *Schumacher,* 166 N. Y. 506; *Fulton Trust Co.* v. *Phillips,* 218 N. Y. 573.) This case does not come under the well-recognized rule that where there is no gift, and no language importing a gift except in the direction to convert real estate into money and then make distribution, the vesting is postponed until the time of payment because time is annexed to the substance of the gift; but it comes rather under the exception to that rule, which is just as well recognized, that where the enjoyment of the legacy is postponed to accommodate the estate, or to enable it to meet another burden first imposed upon it, the legacy will be regarded as vested as of the date of the testator's death. (*Matter of Young,* 78 Hun, 521; 145 N. Y. 535; *Fulton Trust Co.* v. *Phillips,* 218 N. Y. 573; *Cammann* v. *Bailey,* 210 N. Y. 19; *Matter of Brown,* 154 N. Y 313; *Matter of Tapley,* 88 Misc. Rep. 393; *Matter of Ralph,* 91 Misc. Rep. 373.)

CHASE, J. The intention of a testator as disclosed by his will and in the light of the circumstances surround-

ing him at the time it was made should, so far as consistent with the rules of law, control the courts in construing it.

It is, as has been said so many times, the cardinal rule in the construction of wills that the intention of the testator should be ascertained if possible.

If the intention of the testator is ascertained with reasonable certainty and the provisions of the will are valid it is quite unnecessary to discuss the decisions made in other cases. (*Cammann* v. *Bailey,* 210 N. Y. 19.)

A careful. examination and consideration of the language of the will before us is important to determine the testator's intention.

The testator at the time of making his will had other children than his son Abraham and his daughter Sarah, or at least he had had other children than those two. This appears from the small gifts in trust for two persons named whom he designates as "my sons-in-law" and which amount so given he directs his executors to place in two savings banks and · pay the interest to said beneficiaries every six months. Whether he had more than the two children living does not appear, but it is very clear that the testator's chief objects of care and consideration were his son Abraham and the daughter Sarah. The will was probably drawn by a layman and perhaps by the testator himself. In any case the language is in many respects significant. In making the gifts to his sons-in-law he says: "I give and bequeath" — in providing two other specific legacies he says "I further give and bequeath" — and in making the gift to his son Abraham and his daughter Sarah, he says "I further give." In connection with the gift to his son and daughter of the use of his house, he adds, "For their mutual benefit," and then further adds, " Also all my household furniture to be equally divided between them but not sold and also all the residue of money in banks or elsewhere after paying the sums as herein directed." His

1917.]               Opinion, per CHASE, J.               [220 N. Y.]

purpose apparently was not only to have the house retained by his son and daughter, but, by his direction that his furniture should not be sold, he evidences his desire to keep the house furnished, either for occupancy by them or to be rented to produce an income for their use. When he provides for the ultimate disposition of the amount given to his sons-in-law for their lives respectively instead of using in connection therewith the word "gift" or "bequest" he says, "After the decease of the above-named parties" (sons-in-law) the amount held for the benefit of one "shall be paid to the children of my son Abraham Pulis share and share alike," and the amount held for the benefit of the other "to the children of my daughter Sarah Powles share and share alike." He does not in terms give the fee of the real property to any one, but directs that the house shall after the death of the two children named be sold, and without words of gift he directs that the executors shall "divide the net proceeds of said sale one-half the amount between the children of my son Abraham Pulis and the other half thereof between the children of my daughter Sarah Powles."

The words used by the testator descriptive of persons are also significant. He speaks of his "sons-in-law," "children of my son Abraham," "children of my daughter Sarah," "my son Abraham and my daughter Sarah," "my two children Abraham and Sarah," "the oldest of my son and daughter's children," and further on in the will of his "grandson William." The testator's use of words is definite and clear. When he intended a "gift or bequest" to take effect at once he used words accordingly, and when he intended to make a gift by a mere division of particular property through his executors at a time he so stated, and that in clear and unmistakable words. He did not confuse children with grandchildren or great-grandchildren. In specifying among whom the division of the "net proceeds" of his house should be divided he used the word "children" in its primary and

ordinary sense. Such a use of the word is a designation of a class.

"The word 'children,' in common parlance, does not include grandchildren, or any others than the immediate descendants in the first degree of the person named as the ancestor." (*Palmer* v. *Horn*, 84 N. Y. 516, 521.)

The primary purpose of the testator, as we have seen, was to make provision for his two children named. The division of the net proceeds of the house after the death of the son Abraham and the daughter Sarah was remote and secondary. When he made his will the children of his grandson Sylvester had not been born. It would have been a very simple matter for him had he desired it, to have provided that the descendants of a deceased child of either his son or daughter should take the same share that it or their parent would have taken if living. He did not so provide. The direction, authority and power given to the executors to sell the house took effect immediately upon the death of the testator's children. There was no vesting of title or interest in the children of the testator's son Abraham or daughter Sarah prior to that time, certainly not except upon the contingency of survivorship. Where final division and distribution is to be made among a class, the benefits of the will must be confined to those persons who come within the appropriate category at the date when the distribution or division is directed to be made. (*Matter of Crane*, 164 N. Y. 71, and cases cited; *Matter of Baer*, 147 N. Y. 348, 354, and cases cited; *Delaney* v. *McCormack*, 88 N. Y. 174, 183; *Robinson* v. *Martin*, 200 N. Y. 159; *Dickerson* v. *Sheehy*, 209 N. Y. 592; *Fulton Trust Co.* v. *Phillips*, 218 N. Y. 573, 583.)

There is no language in the will that is susceptible of a construction that will avoid the "divide and pay over" rule as is pointed out in the cases mentioned in the dissenting opinion in *Dickerson* v. *Sheehy* (*supra*). If it appeared from the will that the testator intended to vest the

title to the house in the children of his son Abraham and daughter Sarah as of the date of his death it would, of course, be the duty of the court to carry out such intention and sustain the judgment appealed from, but it does not so appear from the will.

The order should be modified by directing that the one-half of the net proceeds of the sale in controversy and of the income thereon as provided in the order be divided in equal shares between the appellants and excluding the widow and children of Sylvester Pulis therefrom, and as so modified affirmed, with costs payable out of the fund.

HISCOCK, Ch. J., COLLIN and CUDDEBACK, JJ., concur; HOGAN, CARDOZO and POUND, JJ., dissent.

Ordered accordingly.