In the Matter of the Construction of the Will of CHARLES G. EMERY, Deceased.

Surrogate's Court, Jefferson County, November 20, 1951.

*Thomas G. Chamberlain* for Peggy E. Engl and another, petitioners.

*Paul E. Porter*, special guardian.

*Paul E. Brown* for Northern New York Trust Company, as substituted trustee under the will of Charles G. Emery, deceased.

WRIGHT, S. Charles Goodwin Emery, the testator, died on January 15, 1915, and his will was probated in this court on the 23d day of January, in that year. At the time of his death, he owned an elaborate summer home in the Thousand Islands in the St. Lawrence River, located on Calumet Island. Calumet Island, together with an island known as the Shoal, and an island known as Cap Box Island, and personal property used in connection therewith, were devised and bequeathed to testator's son, Frank Whitney Emery, for life, and upon his death, to his grandson, Charles Goodwin Emery, 2d, for life. The first life tenant, Frank Whitney Emery, died after testator's death; Charles Goodwin Emery, 2d, the second life tenant, is still living.

The will provides " upon the expiration of the life estates * * * I give, devise and bequeath said property in fee simple absolutely to the issue of my said grandson per stirpes and not per capita."

By the second provision of the will, the testator set up a trust in the sum of $100,000, the net income to be applied to the maintenance and repair of the buildings, seawalls and grounds on the said islands, and for the payment of taxes and insurance in connection with the property. This was to continue during the life tenancies provided for in the first provision. The second provision disposes of the remainder of the trust in this language: " subject to the foregoing trust, I give the said principal sum of one hundred thousand dollars to the person or persons in whom the remainder in said Islands shall vest in fee as hereinbefore provided."

The only issue of Charles Goodwin Emery, 2d, who are now living, are the petitioners, Peggy Emery Engl and Marshall Sinclair Emery, who are the children of Charles Goodwin Emery, 2d. A third child of Charles Goodwin Emery, 2d, Frank Whitney Emery, 2d, has died leaving no widow or descendants.

Discussion of the problem here presented requires a review of the history of the property and its nature since it is necessary to ascertain the testator's intention in order to identify the remaindermen. The summer home which testator built on Calumet Island was so extensive that it was known as Calumet Castle. It was built at a period in the history of the Thousand Islands region when most of the summer homes were palatial in character. To operate it as a residence required an army of servants. The property was so extensive that the income from the trust fund was insufficient to keep up the taxes, insurance and repairs to the many buildings and seawalls. Since

Calumet Castle was built in 1895, such economic changes have taken place that instead of mansions for a few summer residents, there are now countless unpretentious summer homes along this part of the St. Lawrence River. The first life tenant died shortly after the testator. The second life tenant never occupied the premises, except on rare occasions, and in later years on those occasions occupied only the caretaker's lodge.

In view of the fact that the premises became unsuitable for use by the second life tenant, and in view of the fact that the buildings were being constantly burglarized, a proceeding was had in this court in 1948, wherein the sale of personal property and certain of the minor buildings was authorized by this court. The net proceeds from such sale in the sum of $5,504.04 were directed to be added to and become a part of the principal of the trust created by clause " Second ".

In 1950 because of changed conditions and even though the will provided that the property was not to be sold during the life estates, in a proceeding had in the Supreme Court the real property was directed to be sold. The proceeds of such sale in the sum of $8,650 were added to the trust fund created under clause " Second ".

In this proceeding the petitioners ask that a determination be made as to the proper disposition of the income of the trust under clause " Second ", which income is now in the hands of the Northern New York Trust Company as substituted trustee, as well as the proper disposition of future income to be received by such trustee.

The petitioners refer to section 63 of the Real Property Law which reads: " § 63. When, in consequence of a valid limitation of an expectant estate, there is a suspension of the power of alienation, or of the ownership, during the continuance of which the rents and profits are undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate. But any and all persons who legally shall have begun heretofore, or shall begin hereafter, to receive any such undisposed of rents and profits or any part thereof by virtue of this section or otherwise, shall continue to receive and enjoy the same notwithstanding the birth thereafter of a child or children to any person or persons receiving all or any part of such rents and profits." The same rule is made applicable to personal property by section 11 of the Personal Property Law. (See *Matter of Harteau*, 204 N. Y. 292, 300.)

Obviously, since the property for which the trust fund was created has been disposed of, the income from the trust can no longer be applied for maintenance. What disposition should be made of the income?

We must consider whether the interest of the issue of the second life tenant is vested or contingent. " The question whether a devise or legacy is vested or contingent, or if vested, whether it is subject to be divested by an executory gift made to take effect in defeasance of a prior gift, often presents one of the most difficult and perplexing problems which can arise in the construction of wills. The legal rules which govern the subject are qualified by so many nice refinements and distinctions, and are so complicated with the question of the testator's intention to be drawn from obscure words or phrases, and as to which judges may and often do differ, that one may well hesitate in very many cases as to his conclusion." (*Kilpatrick* v. *Barron,* 125 N. Y. 751, 753.)

Did Frank Whitney Emery, 2d, have a vested interest in the remainder which was descendible or devisable, or was his interest contingent upon his survival of Charles Goodwin Emery, 2d? Neither Frank Emery, 2d, nor any other issue of Charles Goodwin Emery, 2d, was in existence when testator made his will or when he died. The gift of the remainder was to a class. A gift to a class is a gift of an aggregate sum to a body of persons uncertain in number, at the time of the gift, to be ascertained at a future time, who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number. (*Herzog* v. *Title Guar. & Trust Co.,* 177 N. Y. 86, 97, and cases there cited.) Where the final division and distribution is to be made among a class, the benefits of the will must be confined to those persons who came within the appropriate category at the date when the division or distribution is directed to be made. (*Matter of Pulis,* 220 N. Y. 196, 204.)

Where the will creates a life estate and expresses a disposition of the corpus at the termination thereof, the legal consequences of the death of a person who is designated as a taker of the corpus depend upon the nature of his estate, whether vested or contingent. If the testator intended to create a vested estate or interest, the property goes to the representatives of the devisee or legatee or passes under his will; but if the gift was intended to be contingent on his survival at the termination of the preceding estate, nothing passes to his representatives,

devisees or legatees. (2 Davids, New York Law of Wills, § 945.)

It seems quite obvious that the testator regarded the Calumet property as something which his son and grandson should enjoy during their lifetimes, and when they had died he desired it to pass on to the issue of the grandson who might be living at the death of the surviving life tenant. The fact that he directed the property should not be sold is of importance in determining his intention, as is the fact that the remainder of the trust fund is given to " the person or persons in whom the remainder in said Islands shall vest in fee as hereinbefore provided ". Where the language of the will, as interpreted in the light of surrounding circumstances, leaves the judicial conscience in doubt, it is usual to prefer a construction which will pass the property to persons who are of the testator's blood, rather than to strangers thereto. (2 Davids, New York Law of Wills, § 970; *Wood* v. *Mitcham,* 92 N. Y. 375, 379.) I, therefore, hold that Frank Whitney Emery, 2d, having died before the termination of the life estate, his estate has no interest in the trust fund.

The petitioners being the only living children of Charles Goodwin Emery, 2d, are the persons presumptively entitled to the next eventual estate and the net accumulated income should be paid to them. If there are other children born to Charles Goodwin Emery, 2d, they will be entitled to share with the petitioners in future income.

Present decree accordingly.