William F. Christiana, S.
The will of Malvina Astor, consisting of 16 typewritten pages, was probated in this court on October 4, 1918. At the date of her death, decedent was sur *724 vived by a sister, Charity Ann Snyder and three brothers, Franklin Dinehart, John C. Dinehart and Delbert Dinehart. Maria Ash, a sister, and two brothers, Alfred Dinehart and William Dinehart, predeceased testatrix. By the first 16 articles of the will, decedent bequeathed legacies to various friends and relatives and created trusts for certain members of her family who were not to be included in her residuary estate.
The Seventeenth article of the will, embodying the residuary clause, divided decedent’s remaining estate into four equal parts. A separate rents and profits trust, as defined in subdivision 3 of section 96 of the Beal Property Law, was created in each of said parts. These trusts are referred to as the Charity Ann Snyder Trust, the Franklin Dinehart Trust, the William Dinehart Trust and the John C. Dinehart Trust.
These proceedings are brought to construe the language of the Franklin Dinehart Trust and a portion of the John C. Dine-hart Trust and to settle the accounts of William B. Dinehart who had served as sole continuing trustee of the trusts in question until his recent death. The material portions of the residuary clause with which we are concerned read as follows:
FRANKLIN DINEHART TRUST
“Another of such equal fourth parts to William B. Dinehart, Adrian D. Langdon and George McClellan, in trust, for the said trustees to invest and keep invested, and receive the income arising therefrom, and after paying therefrom all charges and expenses incidental to such trust property and the execution of this trust, to pay over the residue of said income quarterly each year to my brother, Franklin Dinehart, for and during his natural life. Upon the death of the said Franklin Dine-hart, should his children William B. and Ollie E. survive him, the said Trustees to pay over the residue of said income quarterly .to said William B. and Ollie E. for and during their natural life, share and share alike. Upon the death of William B. Dinehart the said trustees are to pay over one-half of the principal of this trust to his issue if any survive him, in the same proportion they would be entitled had the said William B. died intestate possessed of the same. If no issue survive the said William B. Dinehart, said one-half of the principal of this trust to be paid to the issue of Ollie E. in the same proportion they would be entitled had the said Ollie E. Pulver died intestate, possessed of the same.
“ Upon the death of Ollie E. Pulver, the said trustees to pay over one half of the principal of this trust to her issue, in the same proportion they would be entitled had the said Ollie E. died *725 intestate, possessed of the same. In the event she leaves no issue then the said one half of the principal to he paid to the issue of William B. in the same proportion they would be entitled had the said William B. died intestate possessed of the same.” # * *
JOHN" C. DINEHART TRUST
“ The other of such equal fourth parts to William B. Dinehart, Adrian D. Langdon and George McClellan, in trust, for said trustees to invest and keep invested, and receive the income therefrom and after paying therefrom all charges and expenses incidental to such trust property and the execution of this trust, to pay over the residue of said income quarterly each year to my brother, John C. Dinehart, for and during the term of his natural life.
“ Upon the death of the said John C. Dinehart, I direct my said trustees, pay over the residue of said income quarterly each year, as follows: ” * * *
“ One sixth part thereof to William B. Dinehart, for and during the term of his natural life. Upon his death to pay over one sixth of the principal of said trust, with any accumulations of interest, to his issue, if any survive, in the same proportion they would be entitled had the said William B. Dinehart died intestate, possessed of the same. If he leaves no issue then said one sixth of said principal to be paid to the issue of his sister, Ollie E. Pulver, in the same proportion they would be entitled had the said Ollie E. Pulver died intestate, possessed of the same.
“ One-sixth part thereof to Ollie E. Pulver for and during her natural life. Upon her death to pay over one sixth of said principal of this trust to her issue surviving her, in the same proportion they would be entitled had the said Ollie E. Pulver died, intestate, possessed of the same. If she leave no issue, said one sixth part of said principal to be paid to the issue of William B. Dinehart, in the same proportion they would be entitled had the said William B. died intestate, possessed of the same.”
Also of interest to the inquiry is article Eighteenth of decedent’s will which reads as follows: “ Eighteenth. One of the reasons of my making the various trusts in this my Last Will and Testament is to conform as near as possible with an understanding I had with my late husband, Henry Astor, from whom I have received my estate, and my desire is that the funds of my estate be retained in my family as long as possible.”
John C. Dinehart survived testatrix but died shortly thereafter. Franklin Dinehart survived testatrix and died on Octo *726 her 25, 1918. His daughter, Ollie E. Pulver, died on July 3, 1954. She had two children both of whom predeceased her and both of whom also predeceased William B. Dinehart. One child, J. Alan Pulver, was unmarried at the time of his death on April 2, 1933. The other child, Herbert D. Pulver, died testate on February 15, 1951, leaving him surviving his widow, Bernice W. Pulver, and no issue. William B. Dinehart died on July 15, 1955, without issue.
These proceedings stem from the fact that both Ollie E. Pulver and William B. Dinehart died without surviving issue, thereby leaving the ultimate remainder of the Franklin Dinehart trust and the ultimate remainder of one third of the John C. Dinehart trust undisposed of on the face of the will. Since the will contains no explicit disposition of the remainders, recourse must be had to interpretation and construction to ascertain, if possible, an intended class of beneficiaries. The quest is not a simple one and is seldom free from doubt. It has been well stated that “ the search for intention is often a search after a phantom.”
All agree that the testamentary intention must be ascertained within the perimeter of the will. This maxim has been so universally conceded as to require no extended citation of authorities. A refreshing reiteration of the rule is found in Matter of Fabbri (2 N Y 2d 236, 239-240): “ The prime consideration here as in all construction proceedings is the intention of the testator as expressed in the will. All rules of interpretation are subordinated to the requirement that the actual purpose of the testator be sought and effectuated as far as is consonant with principles of law and public policy.”
Four possible theories of interpretation are proposed. These are considered with such brevity as is possible.
first theory of oonstruction : The will should be interpreted to the effect that if a remainder failed as to any of the separate trusts created under the residuary clause, such remainder was to vest by implication in the remaindermen or their descendants named in the other residuary trusts.
The adoption of this theory of construction requires us to find that since the remainders have failed as to the trusts under consideration, we must imply that cross remainders were intended to vest in the beneficiaries or their descendants of the other residual trusts created under paragraph Seventeenth. This would confine distribution to the Charity Ann Snyder, William Dinehart and Franklin Dinehart lines. Those urging this result argue in effect that since the will provides devolution under several varying circumstances, a particular situation *727 not expressly stated can and should be implied to avoid intestacy. Moreover, it is said that such a construction would implement Mrs. Astor’s express desire to keep the funds in the Astor family as long as possible and that the very pattern of the will denotes the interpretation sought.
Reference to a few of the guiding authorities will serve to illustrate the gamut of the doctrine of implication. It has been held that a gift by implication to be justified must be supported by the language of the will itself and cannot be based upon surmise, conjecture or suspicion. (Matter of McClelland, 59 N. Y. S. 2d 123.) The testator’s intention “ must be such as to leave no hesitation in the mind of the court and permit no other reasonable inference.” (Bradhurst v. Field, 135 N. Y. 564; Post v. Hover, 33 N. Y. 593; Masterson v. Townshend, 123 N. Y. 458.) In the Matter of Vowers (113 N. Y. 569, 572) the court cautioned: “ we must be quite sure of the testator’s intention, and not substitute for it some notion of our own; but when his words leave no doubt about his intention and can have no other reasonable interpretation, we are justified in upholding a legacy by implication where no gift in expressed terms has been made.”
In Brown v. Quintard (177 N. Y. 75) decedent disposed of one quarter of his residuary estate by his will to one of his sons but failed to make disposition of the other three fourths. A gift by implication of such three-quarters parts to his remaining sons was sought. In refusing to imply a gift, the court commented (p. 84): “ There has been no direct and explicit disposition of three-fourths of the residue, and the language of the will is not such as to support a disposition by implication.”
The law is summarized in Warren’s Heaton on Surrogates’ Courts (Vol. 7, § 25, p. 192) as follows: The rule of construction which seems to have prevailed is that the inference from the will need not be irresistible or such as to exclude all doubts possible to be raised but must, nevertheless, be such as to leave no hesitation in the mind of the court and must not rest upon mere conjecture. The intention must be clear so that no other reasonable inference can be made.”
Many of the cases cited by counsel where gifts have been implied deal with inadvertent omissions, ambiguous language and unstudied draftsmanship fairly obvious on the face of the will. Courts can and have gone to great lengths to spell out a testator’s apparent intention where his purpose would be scuttled by awkward expression, unskilled wording or inept phraseology. Great latitude seems to prevail where courts strive to *728 clarify a testator’s evident design. ■ Language may be made subordinate to meaning but courts should not mistake construction for recomposition. Thus, in Dreyer v. Reisman (202 N. Y. 476, 479-480) the court said: “ The making of a will naturally imports an intention to make a testamentary disposition of property. But the intention is one thing and its execution is quite another thing. While courts have great latiude in giving effect to imperfectly expressed testamentary intentions, they have no right to make wills for testators. Although a will need not be framed in any particular or set phrase, it must at least be so plain as to furnish some tangible clue to the testator’s intention. In cases where the language of wills [has] been inexact or ambiguous the courts have frequently transposed or inserted words or phrases, or even left out or inserted provisions in order to effectuate an intent that was with reasonable certainty to be gathered from the context of the whole instruments. (Phillips v. Davies, 92 N. Y. 199, 204; Pond v. Bergh, 10 Paige, 140.) Courts have no power, however, to construct a will where none has in fact been made, nor to import into a will new provisions which are designed to create a testamentary disposition which is neither expressed nor necessarily to be implied.”
In the case at bar, there is nothing in the wording of the will which manifests an intention that upon failure of the remainder-men named in the trusts in question distribution should be allocated among the surviving remaindermen or their descendants of the other residual trusts. Assuming however, that justification can be found for implying such a pattern of construction, we still are confronted with two obstacles. The first of these is found in section 42 of the Real Property Law embodying the New York rule against perpetuities. This is aptly pointed up in the brief submitted by counsel arguing for intestacy from which we quote:
“ A remainder limited to living beneficiaries of the other trusts upon the death of William B. Dinehart and Ollie E. Pulver would suspend the power of alienation unlawfully since the members of the class would not be ascertained within two lives in being at the death of testatrix. In respect to Ollie E. Pulver’s share, the power of alienation was suspended for Franklin’s life and Ollie E. Pulver’s. Upon her death without issue, the class of remaindermen could not be ascertained, if William B. Dinehart was still alive. His death without issue would be a condition precedent to the vesting of the remainders in the living beneficiaries of the other trusts. The class of remaindermen could not thus be ascertained within two lives *729 in being and the remainder would, therefore, be void. The same is true in respect of William B. Dinehart’s share of the trust. And it does not matter which of the two, William B. Dinehart or Ollie E. Pulver, should die first, since the period of - suspense of the power of alienation or the postponement of the vesting must be measured from the date of testatrix’ death. It is not what happens but what might happen which determines the validity of future estates within the rule against perpetuities. If, looking from the time of the death of testatrix, events might occur which would suspend, or postpone the vesting, for more than two lives in being, the future estates are void. Herzog v. Title G. & T. Co., 177 N. Y. 86.
“ The remainders of the trust created for the benefit of John C. Dinehart are governed by the same principles. The only difference is found in the substitution of John C. Dinehart for Franklin Dinehart as the first life beneficiary of the trust.”
Hence, if we select the Ollie E. Pulver portion of the Franklin Dinehart trust, it is to be noted that the power of alienation was suspended during the life of Franklin Dinehart and Ollie E. Pulver. Upon Ollie’s death, the remainder must vest in her issue. Ollie’s issue could not be determined until her death. If at her death she left no issue, then the gift is to the issue of William E. Dinehart. His issue, however, could not be determined until his death. At this point, it may well be argued that three life cycles are already involved before the trust is liberated. Had the will expressly provided a gift of the remainder to the beneficiaries of the parallel residual trusts measured on the lives of Franklin, Ollie and William, such a gift would have contravened section 42 of the Beal Property Law, since the suspension endures for longer than two lives in being. (Matter of Johnston, 102 N. Y. S. 2d 544; Matter of Horner, 237 N. Y. 489; Purdy v. Hayt, 92 N. Y. 446.) To imply such a gift would equally run afoul of the statute.
Next, although sharply criticized (see Wright v. Wright, 225 N. Y. 329, 340-341), New York courts have persistently applied the unpopular English doctrine that a lapsed or ineffective devise or bequest is excluded from the operation of the residuary clause where the ineffective disposition was itself a residuary gift. (Skrymsher v. Northcote, 1 Swan. Ch. 566, 570; Beekman v. Bonsor, 23 N. Y. 298, 312; Kerr v. Dougherty, 79 N. Y. 327, 346.) Simply stated, a residue may not augment a residue. This theory has become deeply embodied in our estate law to a point where the Law Bevision Commission of the New York State Bar Association recently observed that the doctrine involved an arbitrary distinction too well established to receive *730 judicial correction and recommended remedial legislation to obviate the effect of the rule. (N. Y. State Bar Assn. Circular No. 107, Jan. 21, 1957.)
While conceding that we are bound by the doctrine, counsel urged that the rule applies only where the gift is to named persons and is inapplicable where the gift is to a class, citing in Matter of Dunster [Brown v. Heywood], 1 Ch. 103 [1909] where it was said (p. 106), that the effect of the rule in almost every instance was to defeat the intention of the testator. The difficulty with this argument is that the will itself makes no gift of the lapsed remainders to a class. In fact, the will makes no gift at all. We must imply a class gift and then by virtue of our own manipulation avoid the effect of the rule. This would rewrite the will to fit a theory.
The industry of counsel, which has been commendable, has failed to discover a case in which cross remainders were implied among separate residual trusts nor has our independent research revealed any. Some emphasis is laid upon Monson v. Paine (22 Misc. 639). There the will created separate trusts for the brothers and sisters of decedent with remainders over to their issue. The share of any life beneficiary who died without issue was left to Robert Center, or his issue, and the issue of testator’s brothers and sisters. Hence, on the face of the will, there was an express alternate gift of the share of a life beneficiary who died without issue to a designated class. In the case at bar there is no such express gift.
We conclude that by virtue of the foregoing, decedent’s will cannot be construed as implying cross remainders in favor of the remaindermen or their descendants named in the separate parallel residual trusts. We consider then the second theory of construction.
second theory of construction : That decedent died intestate as to the trust remainders and that the same should be distributed among all her heirs at law, next of kin and distributees determined as of the date of the termination of the trusts.
It has been the unyielding law of New York that intestacy must be determined as of the date of death of a decedent. (Clark v. Cammann, 160 N. Y. 315.)
In effect the construction sought here would also require us to find a gift by implication since the will contains no express direction disposing of the remainders in question to all the heirs at law, next of kin or distributees of decedent determined at the date of death of the secondary life tenants. The cases cited by proponents of this theory, such as Matter of Sayre (1 A D 2d *731 475); Matter of Wilson (294 N. Y. 903); Matter of Fishel (167 Misc. 145, affd. 256 App. Div. 915, motion for leave to appeal denied 256 App. Div. 977); Matter of Bishop (126 Misc. 722, affd. 219 App. Div. 711); Matter of Armstrong (125 Misc. 153); Matter of Young (133 Misc. 454); Hoppock v. Tucker (59 N. Y. 202) and1Matter of Hawley (76 Misc. 81) seem to be cases involving an express disposition of gifts to persons actually described in the will as heirs at law, next of kin, children, sons, daughters, nieces or by some other similar designation. Their pertinency here is dubious.
The difficulty of construing a gift by implication in any event is further demonstrated by the fact that it is possible to do so under Theory One or under Theory Two. How are we to come within the purview of the rule that the inference from the will must be so clear as to leave no hesitation in the mind of the court as to what the testatrix intended when there is more than one possible interpretation available? Waiving possible legal barriers, testatrix may have intended to give the lapsed remainders to the remaindermen, or their descendants, of the other residual trusts, in which case a few members of the Astor family would be favored to the exclusion of others. She also might have intended to make distribution to all her distributees ascertained as of the date of death of the secondary life tenants. She may have preferred distribution among all her distributees under the existing intestacy statute in operation at the date of her death. She may never have anticipated the contingency at all. We are charged with reading the will of the testatrix and not with reading her mind. To adjudicate which of the possible gifts by implication she might have pre”ferred, if any, is to invade the fields of speculation, fancy and conjecture.
We conclude that the second proposed construction is untenable and pass to consideration of the third suggested interpretation.
third theory oe construotion: That at the death of testatrix the trust remainders vested in Herbert D. Pulver and J. Alan Pulver, the sons of Ollie E. Pulver, deceased, both of whom predeceased her, and the proceeds of said trusts are therefore payable to the estates of Herbert D. Pulver and J. Alan Pulver.
This proposed interpretation has the merit of obviating the objections which exist to finding a gift by implication. It is nevertheless vigorously attacked by reason of the fact that such a distribution, channeled through the estates of Herbert D. Pulver and J. Alan Pulver, would place the fund entirely *732 in the hands of strangers to the blood and thereby nullify the decedent’s express desire, as indicated in the Eighteenth article of her will, to keep the fund in the Astor family as long as possible. Moreover, it is urged that since both Herbert D. Pulver and J. Alan Pulver were in being at the time of the execution of the will, if testatrix had desired to vest the remainders indefeasible in them, she would have specifically named them.
The law favors vesting of remainders. (Cammann v. Bailey, 210 N. Y. 19, 30; Matter of Bump, 234 N. Y. 60, 65; Connelly v. O’Brien, 166 N. Y. 406; Matter of Chalmers, 264 N. Y. 239.) Remainders will be construed as vested rather than contingent unless there is a clear indication in the will to the contrary (Hersee v. Simpson, 154 N. Y. 496). It has been held that the presumption is particularly strong where the gift is of the residuary (Fulton Trust Co. v. Phillips, 218 N. Y. 573, 580). However, all of these authorities, and many others, seem to be predicated on the proposition that no contrary intention was expressed in the will. In this connection, the language of the Astor will is particularly instructive. In regard to the Ollie E. Pulver portion of the John 0. Dinehart Trust, it is to be noted upon Ollie E. Pulver’s death the remainder was to be paid over “ to her issue surviving her ” and that “ if she leave no issue,” the remainder was to be paid to the issue of William B. Dinehart as they would be entitled in the event of his intestacy. In regard to the William B. Dinehart portion of the John 0. Dinehart Trust, it is to be observed that upon William B. Dine-hart’s death the remainder was to be paid “ to his issue, if any survive ” and “ If he leaves no issue,” then over to the issue of Ollie E. Pulver in the same manner as they would be entitled in the event of an intestacy of Ollie E. Pulver. In regard to the William B. Dinehart portion of the Franklin Dinehart Trust, the remainder was to be paid over ‘ ‘ to his issue, if any survive him ” and “ if no issue survive the said William B. Dinehart,” the remainder was to be paid to the issue of Ollie E. Pulver as they would be entitled in the event of her intestacy. Finally, in regard to the Ollie E. Pulver portion of the Franklin Dine-hart Trust, the remainder was to be paid upon her death to her issue in the same proportion as they would be entitled had she died intestate, and “ in the event she leaves no issue” then such remainder was to be paid to the issue of William B. Dine-hart in the manner they would be entitled had he died intestate. From the verbiage utilized, it would appear that testatrix did not employ language manifesting a direct and immediate gift. On the contrary, her direction to distribute looks to the future. The applicable rule in such instances has been summarized as *733 follows: 1 ‘ where in a will there are no words of present gift and the gift is to be found only in a direction to divide and pay over at a future time, thereby annexing futurity to the substance of the gift, it is contingent and vests only at the time of payment ” (3 Jessup-Bedfield on Law and Practice in the Surrogates’ Courts, p. 109, § 1938). It is said that this is an axiom used only as an aid to ascertain intention (Matter of Bennett, 156 Misc. 694) or a canon of construction which yields to a general expressed intention. (United States Trust Co. v. Taylor, 108 Misc. 514, mod. 193 App. Div. 153, affd. as mod. 232 N. Y. 609.) Nevertheless, the conclusion appears inescapable from the words used in the Astor will that the general expressed intention of the testatrix was to make a gift to individuals whose identity could only be determined as of the date of distribution and consequently made contingent upon survivorship. The phrasing of the trusts imports futurity. Authorities are myriad holding that a class gift is contingent and the identity of those who compose the class cannot be ascertained until the time fixed for distribution. (Matter of Crane, 164 N. Y. 71; Robinson v. Martin, 200 N. Y. 159; Cox v. Wisner, 43 App. Div. 591, affd. 167 N. Y. 579; Matter of Gaunt, 204 Misc. 622; Matter of Orr, 192 Misc. 608, affd. 275 App. Div. 702, affd. 300 N. Y. 571; Matter of Emery, 202 Misc. 90; Matter of Bishop, 195 Misc. 204; Matter of Carroll, 105 N. Y. S. 2d 561; Matter of Baer, 147 N. Y. 348; New York Life Ins. & Trust Co. v. Winthrop, 237 N. Y. 93.)
In the Matter of Pulis (220 N. Y. 196, 204), the Court of Appeals indicated: “ Where final division and distribution is to be made among a class, the benefits of the will must be confined to those persons who come within the appropriate category at the date when the distribution or division is directed to be made.”
We conclude, therefore, by virtue of the language employed in the will that the remainders to issue under the residuary trusts were wholly contingent upon survivorship and that no interest became vested in the predeceased children of Ollie E. Pulver. In doing so, we have not overlooked the Matter of Sweazey (2 A D 2d 292); Matter of Elting (268 App. Div. 74, affd. 294 N. Y. 941) and the Matter of Krooss (302 N. Y. 424). We attempt to distinguish these cases from the case at bar.
In the Sweazey case, testatrix was survived by two daughters, namely, Carrie, who was unmarried, and- Frances, who was married and the mother of several children. The will devised certain real property to Carrie for life and provided on her death that the same be divided, share and share alike, among *734 her children, or in default thereof, the property was to be divided equally among the children of the other daughter, Frances. There was also created a similar trust of personal property except that Frances had, after Carrie’s life interest, an intervening life estate before her children were to take the remainder. Frances predeceased Carrie. Only two of Frances’ eight children were alive at the time of Carrie’s death. The question to be determined was whether the estates of the six deceased children of Frances shared in the remainders. The court held that the remainders had vested in the six children on the theory that the only contingency upon which the interest of Frances’ children was made dependent under the will was that Carrie should leave no issue. If that contingency occurred, the gift was to Frances’ children. The will contained no language which would indicate that the remaindermen would be required to survive the life tenant. The gift was construed as either contingent upon Carrie’s leaving no issue or vested subject to be divested by Carrie’s leaving issue. However interpreted, since Carrie left no children, the children of Frances took the remainders and the estates of the deceased children of Frances participated. In the course of its opinion, on page 297, the court made this enlightening observation: “ The context of the will before us is against the implication of a requirement of survival. It is to be noted that the initial gift of the corpus of the real property trust to the children of Carrie, if any, is expressly made subject to defeasance in the event of their failure to survive her. The testatrix thus had the requirement of survival specifically before her in considering the disposititon of the property but she elected not to impose that requirement in the gift over to the children of Frances.” In the Matter of Elting (268 App. Div. 74, 75, supra) the will created a trust for the lives of the husband of the testatrix and her son and provided in part: ‘ ‘ Upon the death of the survivor of the two beneficiaries named in this trust, this trust is to cease and the principal sum is to go to the child or children of my son Clarence if he leaves any surviving him; and if not, then to the children of my nephew Abraham E. Hasbrouck and the children of my niece Mary E. Jackson as their own absolutely, share and share alike.”
The trust terminated on the death of the son, Clarence who had no issue. At the death of testatrix, her nephew and niece above named each had three children but all the children of the nephew died before the son. The court held that the remainders vested in the children of the nephew and the niece subject to being divested if the son left surviving issue.
*735 In both the Sweasey and Elting decisions, the gift or gifts under consideration were made specifically to children. In the Astor will, the remainder gifts in question are to issue, not children, and the gifts are couched in language which unmistakably implies survival. In both the Elting and Sweasey decisions, we believe that the court was primarily influenced by a complete lack of any direction whatsoever indicating survivorship as a condition of the gift. By contrast, the residuary trusts created under the will in question abound with evidence of the testatrix’ intention that survivorship was intended as a condition precedent. To the same effect was the Matter of Krooss (302 N, Y. 424, 426-427, supra) where the material language of the will reads as follows: “ I then give, devise and bequeath * * * to my beloved children, John H. Krooss and Florence Maue, nee Krooss, share and share alike, to and for their own use absolutely and forever.” It was held that a remainder vested by virtue of the irresistible language of the will which specified a present absolute gift and that the gift was to named persons rather than to an indefinite class of issue.
The decisions in Sweasey, Elting and Krooss seem to turn on the particular language employed, namely, language indicative of a present gift or one to named or immediately determinable beneficiaries. The will before us, on the contrary, uses language in terms of futurity and contingencies and contains no language of present direct gifts.
Much space has been devoted in the briefs of counsel as to the meaning of the word “ issue ” as used in the will. Those advocating that the third theory be adopted have ably argued that issue means “ children” and that the testatrix intended that the Pulver children, who were in being when the will was probated, need only survive her, and having survived, their estates immediately vested subject only to divestment in the event William B. Dinehart died with surviving issue or to the diminution if Ollie E. Pulver had additional children. With all due respect to eminent counsel who urge this interpretation, we think that the tenor of the will signifies otherwise. It appears to us that when testatrix employed the term “ issue ” she intended to designate descendants rather than children and that “ issue ” meant issue surviving at the death of the secondary life tenants rather than issue surviving at the death of the testatrix. We cannot agree, for example, that in disposing of the remainder gift of the Ollie E. Pulver portion of the Franklin Dinehart Trust, the phrase “in the event she [Ollie] leaves no issue” should be construed to mean in the event she leaves no issue surviving the testatrix. Moreover, *736 those who drew the will demonstrated that they understood the distinction between “ children ” and “ issue.” Thus, in the Franklin Dinehart Trust, William B. Dinehart and Ollie E. Pulver are referred to as “ children ’ ’ of Franklin Dinehart, whereas the remainders limited upon their deaths are given to their “ issue.”
fourth theory of Construction: That decedent died intestate as to the said trust remainders and that such remainders should be paid over to her distributees determined as of the date of her death.
Much has been presented bearing upon the presumption against partial intestacy and the judicial obligation to avoid it. The fact that an elaborate will was drawn is evidence enough that intestacy was never deliberately intended and no useful purpose will be served in commenting upon the long line of decisions where intestacy has been obviated by judicial ingenuity. Many cases admonish that the scheme of the will ought not be defeated by too narrow a reading of the text nor by confining interpretation to the literal language of an instrument. While subscribing to such generalities, we think in this instance there is no escape from a partial intestacy.
Great stress has naturally been placed on decedent’s expressed desire to keep the fund in the Astor family as long as possible. We cannot of course be indifferent to such a directive although undoubtedly it must yield to established principles of law and public policy. If it is necessary to redraft the will to carry out the instruction then compliance is not within the dominion of the court. It is submitted, however, that decedent’s desire will not be severely curtailed from a finding of intestacy. Indeed, perhaps less so than would be the case were distribution limited to certain members of the Astor family under the first proposed theory. With mild exceptions, under intestacy, apportionment will be confined to those of the blood.
Finally, we are told that the residuary clause expressly disposes of lapsed legacies. The preliminary language of the clause reads: “ Seventeenth. All the rest, residue and remainder of my estate of which I may die possessed, or which I shall in any way be entitled, including all the foregoing legacies that shall lapse, or for any other cause, fail to take effect under any of the provisions hereinbefore contained, and including my interest in all estate under the will of my late husband, which shall not at my death have been distributed by the executors thereunder, I direct my executors to divide into four equal parts, and I give and bequeath the same, in trust, as follows:”.
*737 It is to be observed that the lapsed legacies which testatrix referred to are “ the foregoing legacies which shall lapse.” The wording definitely excludes the trusts created in item Seventeenth and refers only to the first 16 items of the will.
It is held that decedent died intestate as to the remainders of the trusts under consideration and that their corpora must be distributed among her distributees ascertained as of the date of her death.
Submit decree on notice construing will and settling accounts accordingly.